## Richmond

BROTHERHOOD OF RAILROAD TRAINMEN V. COMMONWEALTH OF VIRGINIA, EX REL. VIRGINIA STATE BAR.

June 13, 1966.

Record No. 6229.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson, Carrico and Gordon, JJ.

*Beecher E. Stallard* and *John J. Naughton* (*Henslee, Monek, and Henslee,* on brief), for the appellant.

*Aubrey R. Bowles, Jr.* and *Aubrey R. Bowles, III* (*Bowles and Boyd,* on brief), for the appellees.

GORDON, J., delivered the opinion of the court.

Perhaps we can best delineate the issue now before us by directing attention to what has already been decided and foreclosed.

This suit began in the Chancery Court of the City of Richmond. By decree entered January 29, 1962 (the 1962 decree), the Chancellor permanently enjoined the Brotherhood from violating the laws of this Commonwealth governing the practice of law. See footnote (1) for the Chancellor's factual findings concerning the Brother-

---

(1) "The defendant Brotherhood in 1930 adopted a plan designed to make available to its members, and the families of its deceased members, the professional services of attorneys selected by the Brotherhood to represent them in claims for personal injury or death arising out of railroad service.

"In order to implement this plan the Brotherhood established at its Grand Lodge a 'Legal Aid Department' (renamed on January 1, 1959, 'Department of Legal Counsel'), divided the United States into Regions, and entered into agreements with certain attorneys at law selected by the Brotherhood in each Region, called Regional Counsel (on and after January 1, 1959, called Legal Counsel).

"The defendant Brotherhood assigned one or more 'Regional Investigators' to each such counsel, who were paid by the Brotherhood.

. "The operation of this plan has from its inception resulted, and still results, in channeling all, or substantially all, claims for personal injury to, or death of, members into the hands of such Regional (or Legal) Counsel.

"In furtherance of the plan the defendant Brotherhood has advised, and continues to advise, its members and the families of deceased members with respect to the legal aspects of their claims; has held out, and continues to hold out, Regional (or Legal) Counsel as the .only lawyers approved by the Brotherhood to aid its members and their families; has controlled, and continues to control, directly

hood's illegal practices and the injunctive provisions specifying the proscribed activities.

We affirmed the 1962 decree on the ground it was plainly right.[2]

---

or indirectly, the fees to be charged by such counsel to its members and their families; has furnished to such counsel prompt notice of the injury or death of a member in railroad service for the purpose of aiding such counsel in obtaining legal employment by its members and their families; has solicited, and continues to solicit, the handling of such claims by such counsel; has paid the salaries of the Regional Investigators (whose chief function is to solicit legal employment of such counsel to prosecute such claims), has advised, and continues to advise, members and the families of deceased members that the Regional (or Legal) Counsel will defray expenses and make advances during the pendency of claims; has accepted, both directly and indirectly, a share of the counsel's fees; and has countenanced the sharing of the fees of such counsel by the Regional Investigators and others who procure legal employment for such counsel.

"Various courts throughout the several States in which the practices of the defendant Brotherhood have been subjected to inquiry have reached similar findings of facts and have enjoined the continuance of such practices by the defendant Brotherhood and its Regional (Legal) Counsel.

"The defendant Brotherhood has made protestations on occasions prior to April 1, 1959, that it would discontinue the objectionable aspects of the plan and has from time to time made protestations that it has done so; yet it is admitted in the Brotherhood's answer that these practices continued up to April 1, 1959.

"The court finds that the defendant Brotherhood still adheres to the pattern and design of the plan formulated and implemented in 1930.

"And the court finds that there is reasonable ground for apprehension that this plan and course of conduct will, in furtherance of the defendant Brotherhood's avowed purpose, be adopted and put into effect in the City of Richmond, within the jurisdiction of this court.

"Wherefore, the court doth Adjudge, Order and Decree that the Brotherhood of Railroad Trainmen, its officers, agents, servants and employees, and its members acting in its behalf, be, and they are now, enjoined from in any manner, directly or indirectly, engaging in the practices aforesaid in the Commonwealth of Virginia; and, in particular, from giving or furnishing legal advice to its members or their families; *from holding out lawyers selected by it as the only approved lawyers to aid the members or their families;* from informing any lawyer that an accident has occurred and furnishing the name and address of an injured or deceased member for the purpose of obtaining legal employment for such lawyer, *or in any other manner soliciting or encouraging such legal employment of the selected lawyers;* from stating or suggesting that such selected lawyers will defray expenses and make advances to clients pending settlement of claims; from controlling, directly or indirectly, fees charged or to be charged by any lawyer; from making compensation for the solicitation of legal employment for any lawyer, whether by way of salary, commission or otherwise; from in any manner sharing in the legal fees of any lawyer, or countenancing the splitting of such fees with any layman or lay agency; *and from doing any act or combination of acts, and from formulating and putting into practice any plan, pattern or design, the result of which is to channel legal employment to any particular lawyer or group of lawyers;* and, in general, from violating the laws governing the practice of law in the Commonwealth of Virginia." [Emphasis supplied]

(2) By order entered June 12, 1962, we refused the Brotherhood's petition for

But the Supreme Court of the United States disagreed. *Brotherhood of Railroad Trainmen* v. *Virginia*, 377 U.S. 1, 84 S.Ct. 1113, 12 L.ed.2d 89 (1964).

The Supreme Court, speaking through Mr. Justice Black, framed the issue before it on the appeal from our affirmance:

" * * * [T]he Brotherhood in this Court objects specifically to the provisions [of the 1962 decree] which enjoin it

'. . . from holding out lawyers selected by it as the only approved lawyers to aid the members or their families; . . . or in any other manner soliciting or encouraging such legal employment of the selected lawyers; . . . and from doing any act or combination of acts, and from formulating and putting into practice any plan, pattern or design, the result of which is to channel legal employment to any particular lawyer or group of lawyers . . . .' " [3] (377 U.S. at 4-5, 84 S.Ct. at 1115-1116, 12 L.ed.2d at 92)

The Court then proceeded to uphold the Brotherhood's objection:

"The Brotherhood admits that it advises injured members and their dependents to obtain legal advice before making settlement of their claims and that it recommends particular attorneys to handle such claims. The result of the plan, the Brotherhood admits, is to channel legal employment to the particular lawyers approved by the Brotherhood as legally and morally competent to handle injury claims for members and their families. It is the injunction against this particular practice which the Brotherhood, on behalf of its members, contends denies them rights guaranteed by the First and Fourteenth Amendments. We agree with this contention." (377 U.S. at 5, 84 S.Ct. at 1116, 12 L.ed.2d at 92-93)

The Court vacated the decree of January 29, 1962. The case was remanded to us, and we in turn remanded it to the Chancery Court of the City of Richmond, for proceedings not inconsistent with the majority opinion of the Supreme Court. After hearing argument, the Chancery Court on January 15, 1965 entered another permanent injunction against the Brotherhood, the terms of which differed in certain respect from those of the 1962 decree. The Brotherhood has prosecuted this appeal from the decree of January 15, 1965 (the 1965 decree).

The question before us is then quite narrow: Are the injunctive

an appeal to this Court, thereby affirming the decree of the Chancery Court of the City of Richmond.

(3) See footnote (1) for the complete injunctive provisions of the decree. The provisions quoted by Mr. Justice Black are emphasized in footnote (1).

provisions of the 1965 decree consistent with the majority opinion of the Supreme Court in *Brotherhood of Railroad Trainmen* v. *Virginia, supra?* If so, we should affirm the decree. If not, we must amend the decree to make it consistent.

Our duty to obey the mandate of the Supreme Court is clear. In rendering a decision today, we cannot alter our course because of disagreement with Mr. Justice Black's characterization of the Brotherhood's practice of securing employment of union-selected counsel as an exercise of benevolence for the protection of union members and their families (377 U.S. at 2-4, 84 S.Ct. at 1114-1115, 12 L.ed.2d at 91-92). Nor can we alter our course because of agreement with the prediction in Mr. Justice Clark's dissenting opinion: "The potential for evil in the union's system is enormous and . . . will bring disrepute to the legal profession" (377 U.S at 12, 84 S.Ct. at 1119, 12 L.ed.2d at 96).

This brings us to the task of interpreting the majority opinion in *Brotherhood of Railroad Trainmen* v. *Virginia, supra.* But since our interpretation is apposite only insofar as it may bear upon the decree under review, we will first set forth the provisions of the 1965 decree at which the Brotherhood levels its main attack:

" * * * [T]he Brotherhood of Railroad Trainmen, its officers, agents, servants, employees, members and anyone acting in its behalf, . . . are . . . permanently restrained and enjoined * * * from soliciting for, or on behalf of, its Regional or Legal Counsel or any other lawyer, any of its members, their families or any other person to employ such Regional or Legal Counsel or other lawyer to represent him, her or them in court or otherwise, in respect to any claim for personal injury, death or in relation to property; * * * [and] from doing any act or combination of acts that constitutes or amounts to the solicitation of legal employment for or on behalf of any lawyer, or conspiring to do so; * * *

"But nothing herein contained shall be construed to infringe upon or restrict the constitutional rights of the defendant, its officers, agents, servants, employees or members, to advise the defendant's members or their families or others, to obtain legal advice before making settlement of their claims for injury or death, and to recommend a specific lawyer or lawyers to give such advice or handle such claims; provided, however, that the circumstances of such advice and recommendation shall not constitute or amount to, the solicitation of legal employment for or on behalf of any lawyer or lawyers. The term 'solicit' and its derivatives, as herein employed,

shall refer to the same terms as employed or intended by the common law, the statutes of this state, and Canons of Legal Ethics of the American Bar Association, adopted in this state." (The entire injunction is set forth in the footnote.)[4]

The decree thus draws the line between forbidden solicitation and permitted recommendation. The 1962 decree, vacated by the Supreme Court, had enjoined the Brotherhood from soliciting *or* encouraging the employment of lawyers selected by the Brotherhood and from pursuing any plan that would result in the channeling of legal employment (see footnote (1)). The new decree enjoined solicitation, not encouraging or recommendation.

The Chancellor interpreted Mr. Justice Black's opinion narrowly. He interpreted the opinion as requiring only that the Brotherhood

---

(4) " * * * [T]he Brotherhood of Railroad Trainmen, its officers, agents, servants, employees, members and anyone acting in its behalf, be, and they now are, permanently restrained and enjoined from giving or furnishing legal advice to its members or their families; *from soliciting for, or on behalf of, its Regional or Legal Counsel or any other lawyer, any of its members, their families or any other person to employ such Regional or Legal Counsel or other lawyer to represent him, her or them in court or otherwise, in respect to any claim for personal injury, death or in relation to property;* from informing any lawyer or lawyers *or any person whomsoever* that an accident has been suffered by a member or non-member of the said Brotherhood and furnishing the name and address of such injured or deceased person for the purpose of obtaining legal employment for any lawyer; from stating or suggesting that a recommended lawyer will defray expenses of any kind or make advances for any purpose to such injured persons or their families pending settlement of their claims; from controlling, directly or indirectly, the fees charged or to be charged by any lawyer; from accepting or receiving compensation of any kind, directly or indirectly, for the solicitation of legal employment for any lawyer, whether by way of salary, commission or otherwise; from sharing in any manner in the legal fees of any lawyer or countenancing the splitting of or sharing in such fees with any layman or lay agency; from sharing in any recovery for personal injury or death by gift, assignment or otherwise; *from doing any act or combination of acts that constitutes or amounts to the solicitation of legal employment for or on behalf of any lawyer, or conspiring to do so;* and, in general, from violating the laws governing the practice of law in the Commonwealth of Virginia and from aiding and abetting others to do so.

"But nothing herein contained shall be construed to infringe upon or restrict the constitutional rights of the defendant, its officers, agents, servants, employees or members, to advise the defendant's members or their families or others, to obtain legal advice before making settlement of their claims for injury or death, and to recommend a specific lawyer or lawyers to give such advice or handle such claims; provided, however, that the circumstances of such advice and recommendation shall not constitute or amount to, the solicitation of legal employment for or on behalf of any lawyer or lawyers. The term 'solicit' and its derivatives, as herein employed, shall refer to the same terms as employed or intended by the common law, the statutes of this state, and Canons of Legal Ethics of the American Bar Association, adopted in this state." [Emphasis supplied]

be left free to recommend approved lawyers, even though its recommendations would foreseeably result in the channeling of legal employment. He saw nothing in the opinion to prevent his restraint of the Brotherhood's solicitation of legal employment.

The difficulty of drawing a line between solicitation and recommendation is evidenced by the provisions of the 1965 decree that purport to advise what is meant by "solicitation". The decree does not attempt to define "solicitation"; it merely refers to source materials outside of the decree. The decree requires the defendants to understand truly the meaning and intendment of "solicitation" as set forth in three sources: the vast body of the common law, the statutes of Virginia and the Canons of the American Bar Association adopted in Virginia. Upon pain of contempt if their understanding should be faulty, the defendants are required to forego any action constituting solicitation as so defined.

The decree cannot stand in its present form. As said long ago by Judge Spencer Roane, a decree cannot be properly entered against persons, subjecting them to process for disobedience, "which as yet remains general and uncertain, and the extent of which, as it relates to them, they [have] no adequate means to ascertain". *Birchett* v. *Bolling*, 5 Munf. (19 Va.) 442, 456 (1817).

We should nevertheless examine Mr. Justice Black's opinion to determine whether it permits drawing a line between solicitation and recommendation in this case, and whether it permits restraint against solicitation. If so, we should not be deterred by the difficulty of drawing such a line by appropriate decretal language.

The State Bar points particularly to this language of Mr. Justice Black's opinion to sustain its position that the Chancellor's injunction against solicitation is consistent with the opinion:

> "We hold that the First and Fourteenth Amendments protect the right of members through their Brotherhood to maintain and carry out their plan for advising workers who are injured to obtain legal advice and for *recommending* specific lawyers. Since the part of the decree to which the Brotherhood objects infringes those rights, it cannot stand; and to the extent any other part of the decree forbids these activities it too must fall." [Emphasis supplied] (377 U.S. 8, 84 S.Ct. 1118, 12 L.ed.2d 94)

The State Bar contends that the Supreme Court held the right to recommend protected by the Constitution; that the Court did not hold, or intend to hold, the soliciting of legal employment protected by the Constitution.

But the Court's characterization of the Brotherhood's activities as "recommending" does not justify the narrow interpretation advocated by the State Bar. The Court's opinion forbids restraint of activities held constitutionally protected. We must leave the Brotherhood free to pursue these activities, however they may have been characterized by the Supreme Court or may be characterized under Virginia law.[5]

As recognized in the opinion, the Brotherhood carries out its activities pursuant to an established plan. The plan is obviously designed to channel legal employment to lawyers selected by it. In carrying out the plan, the Brotherhood seeks out each injured trainman or a member of his family. It not only gives general advice about the wisdom of engaging counsel, but also recommends the employment of specific Regional Counsel selected by the Brotherhood.

The Supreme Court expressly sustained the Brotherhood's objection to the restraint against its activities in "soliciting or encouraging . . . legal employment . . . of lawyers [selected by the Brotherhood]". While sustaining this objection, the Court recognized that the Brotherhood was asking protection from restraint of activities that admittedly resulted in the channeling of legal employment to particular lawyers. (See the language of Mr. Justice Black's opinion quoted in the fourth and fifth paragraphs of this opinion.)

We interpret the opinion as denying the State's right to restrain these activities. The Court held that the Brotherhood's activities fell within the protection of the First Amendment guarantees of free speech, petition and assembly. In the Court's opinion, the State had failed to show any appreciable public interest that would justify restraint of the Brotherhood's pursuit of constitutionally protected activities.

Our interpretation of the majority opinion should come as no surprise to the bar. The opinion was generally viewed as a further Federal inroad into an area that had been regarded as reserved to the states—the regulation of the practice of law within a state. Both the Virginia State Bar and the American Bar Association so regarded the opinion or, at least, expressed grave concern that it would be so interpreted.[6]

It cannot be doubted, moreover, that the dissenting Justices of the

(5) Compare the statement in the majority opinion, borrowed from *N.A.A.C.P. v. Button,* 371 U.S. 415, 429: ". . . the exercise of constitutional rights [cannot be foreclosed] by mere labels" (377 U.S. 6, 84 S.Ct.1117, 12 L.ed.2d 93).

(6) See the petition of the Virginia State Bar for a rehearing of this case by the Supreme Court and the *amicus* brief of the American Bar Association in support

Supreme Court so regarded the opinion. They would hardly have predicted such dire results if the majority opinion had merely re-affirmed the proposition that the right of free speech included the right to give recommendations to fellow citizens.

The Virginia Legislature did not shrink, as Mr. Justice Black did, from attaching the label "solicitation of professional employment" to activities like those conducted by the Brotherhood as shown by the record in this case. Va. Code Ann. § 54-78(c) (Supp. 1964), a part of the "running and capping" statute, provides:

> " '*Solicitation of professional employment*' is the obtaining or at-tempting to obtain for an attorney at law representation of some other person to render legal services for such other person and whereby such attorney at law will or may receive compensation; provided that neither conduct limited to mere statements of opinion respecting the ability of a lawyer, nor conduct pursuant to a uni-form legal aid or lawyer referral plan approved by the Virginia State Bar, shall be deemed the solicitation of professional employment."

Whether or not the Brotherhood confines its words to those of recommendation, its conduct includes far more than "mere state-ments of opinion respecting the ability of a lawyer". Its activities, designed to obtain representation for specific lawyers, are illegal under the statute proscribing running and capping. This statute is not referred to specifically in the 1965 decree, but is incorporated by the general reference to the laws governing the practice of law in Virginia. The statute authorizes the injunction entered by the Chancellor but the injunction must yield to the mandate of the Supreme Court.

We do not rule out the applicability of Virginia laws regu-lating the practice of law, including the running and capping statute, in other cases. We only hold that these laws cannot be invoked against the Brotherhood in this case because of the mandate of the Supreme Court. That mandate, according to the majority opinion, was issued to protect the right to conduct activities under a benev-olently inspired plan concerned with the prosecution of rights under Federal statutes (the Safety Appliance Act and the Federal Em-ployers Liability Act), where the State had failed to show an appre-ciable contrary public interest. Only time can tell whether a sim-ilar mandate will be issued in a case presenting different facts.

Nor do we rule out the applicability of Virginia laws and Canons

of the petition. The rehearing was denied. 377 U.S. 960, 84 S.Ct. 1625, 12 L.ed.2d 505 (1964).

in disciplinary or injunctive proceedings against Regional Counsel or any other lawyer approved by the Brotherhood who may have solicited, or joined in or authorized solicitation of, legal employment.[7] We do not interpret this dictum in Mr. Justice Black's opinion as ruling out the applicability of Virginia laws and Canons in such proceedings: "And, of course, lawyers accepting employment under this constitutionally protected plan have a like protection which the State cannot abridge" (377 U.S. at 8, 84 S.Ct. at 1118, 12 L.ed.2d at 94). We take this statement as indicating that the Brotherhood's activities, which were held constitutionally protected under the facts of this case, do not preclude a lawyer from *accepting* employment. We do not interpret the statement as denying the State's power to enjoin or discipline attorneys who are parties to solicitation of their employment.

By another assignment of error, the Brotherhood objects to the portion of the 1965 decree enjoining the Brotherhood

"from informing any lawyer or lawyers or any person whomsoever that an accident has been suffered by a member or non-member of the said Brotherhood and furnishing the name and address of such injured or deceased person for the purpose of obtaining legal employment for any lawyer".

This injunction is directed against the furnishing of information for the purpose of enabling lawyers to solicit legal employment. The majority opinion upholds the workers' "constitutionally guaranteed right to assist and advise each other" (377 U.S. at 6, 84 S.Ct. at 1116, 12 L.ed.2d at 93). It does not, in our opinion, give the Brotherhood the right to take action that is designed to enable lawyers to solicit employment. We therefore overrule the Brotherhood's objection, except insofar as it relates to the words "or any person whomsoever". After those words are deleted, the injunction will clearly restrain only actions designed to assist lawyers in running and capping for themselves.

By its many other assignments of error, the Brotherhood complains of the Chancellor's admission of certain evidence, when this case was first heard, and of provisions of the 1965 decree, not discussed in this opinion, that are substantially the same as provisions of the 1962 decree. The Supreme Court's opinion in *Brotherhood of Railroad Trainmen* v. *Virginia, supra,* casts no doubt upon the correctness of our previous order, insofar as we overruled these

(7) The injunction in this case is directed to non-lawyers. Regional Counsel was named as a party, but was not served with process.

objections by holding the 1962 decree plainly right.[8] No sound reason has been advanced for reversing our previous order in these respects.

The order to be entered will delete from the 1965 decree the emphasized words set forth in footnote (4). The case will be remanded to the Chancery Court for any proceeding that may be necessary to enforce the modified decree.

*Modified, affirmed and remanded.*

CARRICO, J., dissenting.

I dissent. I do not agree that the labor union involved in this case should be permitted to solicit legal business for its sixteen regional counsel and I cannot believe that the United States Supreme Court ever intended such a result to ensue.

The majority says that it finds a clear expression in the Supreme Court's opinion which requires it to hold that the union may engage in solicitation. The majority, then, has found something which the writer of that opinion failed to express in plain language and which others have found to be quite an elusive prey. See Comment, The Brotherhood Case, 51 Va. Law Review 1693.

I do not pretend to have any greater powers of clairvoyance than others who have tried to decipher the Supreme Court's opinion but, to me, all that the court held was that the union had the right to advise injured workers to obtain legal advice and to recommend specific lawyers, and that, in so advising and recommending, the union was not engaged in solicitation.

It is, of course, futile to say that I do not agree even with that holding. I am bound by it. I would not, though, extend the vague language of the opinion one iota beyond that holding.

Admittedly, my construction, as was the chancellor's, is the narrowest possible construction which may be placed upon the Supreme Court's opinion. But, in the interest of protecting the ethics of the legal profession, I believe such a construction to be both fully warranted by the opinion and crucially necessary.

The decree of the chancellor respects the union's recently declared right to advise injured workers to obtain legal advice and to recommend specific lawyers. The decree forbids solicitation. I would affirm the actions of the chancellor in those respects.

(8) See Footnote (2).

I would leave it up to the Supreme Court itself to extend its ruling to permit the union to solicit legal business, if that was its intention in the first place. While my powers of prescience are no better than my abilities of clairvoyance, I believe that there is a good chance that the court, if given the opportunity, will say that it had no such intention.