STATE BAR OF MICHIGAN *v.* BROTHERHOOD
OF RAILROAD TRAINMEN.

OPINION OF THE COURT.

1. APPEAL AND ERROR—CERTIORARI DENIAL—PRECEDENT.

Denial of certiorari by the United States Supreme Court makes
no precedent nor does it import an expression of opinion
upon the merits of the case.

2. APPEAL AND ERROR—JUDGMENT—RAILROADS—TRAINMEN—REFER-
RAL—LAWYERS—DECREE.

A judgment of the highest court of Virginia in 1966 which
eliminated certain objections upheld by the United States
Supreme Court to the Virginia court's 1962 decree prohibiting
the Brotherhood of Railroad Trainmen from carrying on a
plan of activity which included a referral of Brotherhood
members to certain lawyers for legal assistance involving
work-related injuries or death may serve as a constitutionally
acceptable model for a decretal judgment made in a Michigan
circuit court regulating the same activities of the same
Brotherhood.

3. APPEAL AND ERROR—UNIONS—CONSTITUTIONAL LAW—LAWYERS.

Appeal from a decretal judgment regulating legal activities of
the union which contains no prohibition of any financial
connections between an attorney and the union is not affected
by a decision that a decree prohibiting financial connection
between the attorney and the union denied First and Four-
teenth Amendment protection to the union (US Const, Ams
1, 14).

4. ATTORNEY AND CLIENT—TRAINMEN—INJUNCTION.

A judgment preventing the Brotherhood of Railroad Trainmen
from furnishing legal advice, from informing lawyers of
accidents or the names of injured persons, from suggesting

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 14 Am Jur 2d, Certiorari § 65.
[2–6] 7 Am Jur 2d, Attorneys at Law §§ 42, 83.
20 Am Jur 2d, Courts § 203 *et seq.*
48 Am Jur 2d, Labor and Labor Relations § 58.
Maintenance of lawyer reference system by organization having
no legal interest in proceedings. 11 ALR3d 1206.
[7] 42 Am Jur 2d, Injunctions § 284 *et seq.*

that a recommended lawyer will make advances pending settlement of claims, from controlling fees to be charged by lawyers, from receiving compensation for solicitation of any lawyers and from sharing lawyers' fees or sharing in any recovery for personal injury or death by gift or otherwise, is affirmed.

DISSENTING OPINION.

T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ.

5. LABOR RELATIONS—CONSTITUTIONAL LAW—REFERRALS—LAWYERS.

*The freedom of speech, ·assembly and petition guaranteed by the First and Fourteenth Amendments of the United States Constitution protects a union in advising workers who are injured to obtain legal advice and in recommending specific lawyers or in hiring salaried lawyers to assist its members in the assertion of their legal rights (US Const, Ams 1, 14).*

6. INJUNCTION—RAILROAD TRAINMEN—LAWYERS—REFERRALS.

*A judgment preventing the Brotherhood of Railroad Trainmen from furnishing legal advice, from informing lawyers of accidents or of the names of injured persons, from suggesting that a recommended lawyer will make advances pending settlement of claims, from controlling fees to be charged by lawyers, from receiving compensation for solicitation of employment for any lawyer, and from sharing lawyers' fees or in any recovery for personal injury or death by gift, assignment, or otherwise, is inconsistent with and in violation of United States Supreme Court decision.*

7. INJUNCTION—EVIDENCE—HEARING—RELIEF.

*Injunctive relief should not be granted before a full hearing is held and convincing proofs are presented, and where the only proof produced at a hearing is testimony of one person relating to a period ten years before, the evidence is inadequate to sustain the granting of injunctive relief.*

Appeal from Jackson, John C. Dalton, J., and from Court of Appeals prior to decision. Submitted December 9, 1969. (Calendar No. 43, Docket No. 52,106.) Decided March 9, 1970. Rehearing denied May 4, 1970. Reversed by the Supreme Court of the United States April 5, 1971, *sub nom. United Transportation Union* v. *The State Bar of Michigan.* (39 LW 4428.)

Complaint by the State Bar of Michigan to enjoin the Brotherhood of Railroad Trainmen from directly or indirectly engaging in solicitation in the state of Michigan of claims or causes arising under the Federal Employers' Liability Act.   Injunction granted. The Brotherhood of Railroad Trainmen appealed to the Michigan Supreme Court, which remanded to circuit court for proceedings not inconsistent with a United States Supreme Court opinion.   Decree granted.   The Brotherhood of Railroad Trainmen appealed to the Court of Appeals and applied for leave to appeal prior to decision of the Court of Apeals.   Leave granted.   Decree affirmed.

*Kelly, Kelly & Kelly,* for plaintiff.

*John J. Naughton* and *Nelson & Wilson,* for defendants.

BLACK, J.   In January of 1964 this Court ordered that *State Bar of Michigan* v. *Brotherhood of Railroad Trainmen,* our Docket No. 50,093, stand abeyant "pending final determination, by the Supreme Court of the United States, of the case of *Railroad Trainmen* v. *Virginia State Bar,* Docket 34, certiorari granted (372 US 905 [83 S Ct 719, 9 L Ed 2d 715])."[1] April 20, 1964 the Supreme Court decided the docketed cause thus brought up on certiorari. *Brotherhood of Railroad Trainmen* v. *Virginia, ex rel. Virginia State Bar* (1964), 377 US 1 (84 S Ct 1113, 12 L Ed 2d 89).   That court vacated the injunctive decree which had been entered and affirmed in Virginia,[2] and "remanded for proceedings not inconsistent with this opinion."

---

[1] The order is quoted in full, *State Bar of Michigan* v. *Brotherhood of Railroad Trainmen* (1965), 374 Mich 152, at 154, 155.

[2] This Virginia decree is known as "the 1962 decree."   It includes the Virginia chancellor's factual findings.   See footnote (1) of *Brotherhood* v. *Commonwealth, infra.*

October 7, 1964 No. 50,093 was resubmitted. January 4, 1965 we reversed and remanded the decree which in the Jackson circuit had been entered September 14, 1962, adding this:

"Since a public question of moment is involved, we remand with permission for amendment of plaintiff's bill to seek, if it be so advised, relief not inconsistent with the Supreme Court's said opinion." (*State Bar of Michigan* v. *Brotherhood of Railroad Trainmen* (1965), 374 Mich 152, 155.)

The ensuing events of present concern appear in *Brotherhood of Railroad Trainmen* v. *Commonwealth of Virginia, ex rel. Virginia State Bar* (1966), 207 Va 182 (149 SE2d 265, *cert den*, Jan. 16, 1967, 385 US 1027 [87 S Ct 754, 17 L Ed 2d 675]), and thereafter in the Jackson county circuit court upon remand as ordered. We take up these events in order. The *Virginia* case and its history comes first.

Through its Commonwealth the Virginia State Bar sued the Brotherhood and others, in the Chancery court of Richmond, Virginia, to enjoin the carrying on of a "plan" of activity which, according to the Bar, constituted the solicitation of legal business and the unauthorized practice of law in Virginia. The suit was planted upon allegation that the Brotherhood's plan is that of advising its injured members and their families to obtain legal advice prior to making settlement of claims against their employers for injury or death; that the plan results in the channeling of legal employment to particular lawyers approved by the Brotherhood; that the Brotherhood maintains a Department of Legal Counsel for the purposes of the plan, and that the plan violates the laws of Virginia and the ethical codes of the legal profession.

The chancery court found that the activities of the Brotherhood pursuant to such plan consisted not only of illegal solicitation of law business but did result in "channeling all, or substantially all" of the employee *versus* employer business to lawyers chosen by the Brotherhood's Department of Legal Counsel. Upon these and auxiliary findings the chancellor enjoined the complained-of activities in Virginia.

The highest court of Virginia affirmed summarily as against the Brotherhood's appeal to the First and Fourteenth Amendments (see *Brotherhood* v. *Commonwealth, supra,* at 2); whereupon the Supreme Court granted certiorari to consider the constitutional question "in the light of our present decision in *NAACP* v. *Button* (1963), 371 US 415 (83 S Ct 328, 9 L Ed 2d 405)." The plan of the Brotherhood thus enjoined was analyzed and, within the scope of the questions decided, approved by the Supreme Court in the cited decision of April 20, 1964. The Supreme Court said:

"The result of the plan, the Brotherhood admits, is to channel legal employment to the particular lawyers approved by the Brotherhood as legally and morally competent to handle injury claims for members and their families. It is the injunction against this particular practice which the Brotherhood, on behalf of its members, contends denies them rights guaranteed by the First and Fourteenth Amendments. We agree with this contention." (p 5.)

Then the Supreme Court confronted the organized bar associations of the several states, and the subsequently objecting American Bar Association, with this specific ruling:

"We hold that the First and Fourteenth Amendments protect the right of the members through their

Brotherhood to maintain and carry out their plan for advising workers who are injured to obtain legal advice and for recommending specific lawyers. Since the part of the decree to which the Brotherhood objects infringes those rights, it cannot stand; and to the extent any other part of the decree forbids these activities it too must fall. And, of course, lawyers accepting employment under this constitutionally protected plan have a like protection which the State cannot abridge." (p 8.)

The appellee-respondent duly petitioned for rehearing. The American Bar Association moved for leave to file a brief *amicus* in support of the petition for rehearing. The motion was granted June 1, 1964, and, on the same day, the petition for rehearing was denied. (377 US 960 [84 S Ct 1625, 12 L Ed 2d 505].)

The proceedings on remand to Virginia appear at length in the cited 1966 decision of the Supreme Court of Appeals of Virginia. That court, seeking conformity with the Supreme Court's 1964 opinion, analyzed it with manifest care and, we add, with the deferential respect subordinates owe to their constitutional superiors.[3] Since the pleadings, factual record and judgment now here duplicate substantially the pleadings, factual record and now finally effective decree which in Virginia was entered on remand, we need but say that this court of another

---

[3] Respect for the Supreme Court's majority opinion is not quite so evident in the December, 1965, issue of Virginia Law Review, (Vol 51) "The Brotherhood Case," p 1693. We find portents for our case as well as restrained criticism in this paragraph (p 1697):

"It is submitted that the Supreme Court's opinion in the *Brotherhood* case, reflecting in its befuddling language the Court's lack of consensus, will prove of only transitory importance. However, it is hoped that it will speed the framing of clearer standards by which to judge practices similar to those advocated by the Brotherhood and sought to be regulated by Virginia. Thus, if the case reaches the Court again, little will be gained unless a definite choice is made between balancing and absolutism. It is also submitted that a balancing test is more appropriate."

state must now determine whether that decree comports constitutionally with the aforesaid 1964 opinion. If it does, the Jackson circuit's decretal judgment of May 27, 1968 (now before us for review) should be affirmed. If not, that judgment should be reversed.

Now for the instant case. It was commenced January 28, 1959, in the Jackson circuit for injunctive relief against the same "activities"—occurring as alleged in Michigan—which in Virginia were considered by the Virginia courts and then by the Supreme Court. Decree for the State Bar having entered September 14, 1962, the *Brotherhood* appealed. As seen above, that appeal resulted in reversal and remand for further proceedings not inconsistent with the Supreme Court's opinion of 1964 *Brotherhood*.

On remand the State Bar did not avail itself of the accorded right to amend. It waited instead for disposition on remand of the *Virginia* case and then, setting forth the subsequent proceedings in the *Virginia* case we have outlined, moved for entry of "a judgment in this cause in conformity to said final order of the chancery court of the city of Richmond, Virginia, as aforesaid."

Legal arguments followed, without additional proofs. The Brotherhood insisted and now insists that the Virginia decree does not conform with 1964 *Brotherhood*. The State Bar argued and argues here that the decretal judgment proposed by it and entered below May 27, 1968, conforms with the now-final Virginia decree. By-passing the Court of Appeals, we granted leave to review that judgment September 12, 1968. The appeal was submitted December 9 last.

*First:* Our decision will be understood better by making initial reference to a question posed and

answer made by counsel during oral argument. Our answer is that when the Supreme Court denied certiorari to review 1964 *Brotherhood* that act made no precedent. Neither did it import an "expression of opinion upon the merits of the case, as the bar has been told many times" (Holmes, J., writing for the Court in *United States* v. *Carver* [1923], 260 US 482, 490 [43 S Ct 181, 67 L Ed 361]). As written separately by Mr. Justice Frankfurter, upon denial of certiorari in *Maryland* v. *Baltimore Radio Show* (1950), 338 US 912, 917 (70 S Ct 252, 94 L Ed 562):

"A variety of considerations underlie denials of the writ, and as to the same petition different reasons may lead different justices to the same result. This is especially true of petitions for review on writ of certiorari to a state court."

This view, that no precedent results from denial of review, was written into our own jurisprudence as far back as 1935 (*Malooly* v. *York Heating & Ventilating Corp.*, 270 Mich 240, 247). There it remains. See *Great Lakes Realty Corporation* v. *Peters* (1953), 336 Mich 325, 328, 329, comment in *Williams* v. *City of Detroit* (1961), 364 Mich 231, 288, and our order denying leave to appeal, *Frishett* v. *State Farm Mutual Automobile Insurance Company* (1966), 378 Mich 733, 734.

We proceed accordingly to determine whether the present Virginia decree and therefore the duplicative decretal judgment entered by the Jackson circuit[4] are consistent with 1964 *Brotherhood*. No reliance may be placed upon the fact that, in 1967, the Brotherhood's petition for writ of certiorari was denied. The situation for us is the same as if the Brotherhood had filed no petition.

---

4 See appendix.

It is right to begin by saying that the adjudicatory result in Michigan *ought* to be the same as was reached finally in Virginia. Each suit as commenced, tried and reviewed has been purely equitable from the beginning. The subject matter of both is the extent to which the same planned activity of the Brotherhood comes within the constitutionally-exercised jurisdiction of equity. It would reproach the tenet of equal justice under law if, in Virginia, the decree effective there should vary from the decretal relief which for our part is due to be made effective in Michigan. Starting from such premise, the thrust of which is a reasonable if rebuttable presumption that the Supreme Court is not apt to order that either the Brotherhood or our State Bar suffer or enjoy more in Michigan than do the corresponding antagonists in Virginia, we submit the following compendium of precise convictions reached by comparing *Brotherhood* as decided by the Supreme Court in 1964 with *Brotherhood* as finally settled in Virginia.

We find that the distinctive hub of 1964 *Brotherhood* turns upon desire of the Court, founded as that desire is upon the First and Fourteenth Amendments, that the Brotherhood remain free to help "injured workers or their families by recommending that they not settle without a lawyer and by recom mending certain lawyers selected by the Brotherhood." (footnote 9, 377 US at 5.) Further, although admitting some doubt from here on, we find upon thoughtful comparison of the 1962 decree with the succeeding 1966 decree as entered successively in Virginia, that the highest court of that State has fairly eliminated such of the objections to the 1962 decree as were made by the Brotherhood and upheld by the Supreme Court. See the successive major excisions from the 1962 decree which Virginia's

Supreme Court of Appeals directed, all italicized by the court and portrayed by footnote (4), 207 Va at 187, particularly the elimination of the 1962 banning of solicitation.

The conclusion reached by the Virginia Supreme Court of Appeals reads (207 Va at 189):

"[2] We interpret the opinion as denying the State's right to restrain these activities. The Court held that the Brotherhood's activities fell within the protection of the First Amendment guarantees of free speech, petition and assembly. In the Court's opinion, the State had failed to show any appreciable public interest that would justify restraint of the Brotherhood's pursuit of constitutionally protected activities."

All this considered, nothing appears in the Supreme Court's opinion that declares or portends greater constitutional regulation of the practice of law than does the quoted interpretation of the Supreme Court's general if not possibly uncertain language.[5] We decline accordingly to impute to that Court intent that the Brotherhood of Railroad Trainmen should receive more First and Fourteenth Amendment protection than the State of Virginia now provides for it. Holding, then, that the Jackson circuit's decretal judgment of 1968 is in accord with the present Virginia decree, we align ourselves with that decree. In short, this Court is not ready— absent a specific order forwarded from Washington —to grant the Brotherhood more relief in Michigan than it has obtained thus far in Virginia.

[5] No disrespect is intended. The 1965 writer for the Virginia Law Review may indeed have been right (*ante* p 206 footnote 5) in observing that the Supreme Court's opinion was couched to obtain some semblance of a consensus. If true, let it be noted that we too know all about that fact of judicial life and the occasional need it creates. See our recent contributory consension of generality signed by 4 Justices only, in the *Third Circuit* case, December 8, 1969, 383 Mich 10.

*Second:* The Brotherhood insists that the 1968 decretal judgment denies it the constitutional protection which, in *United Mine Workers of America, District 12* v. *Illinois State Bar Association* (1967), 389 US 217 (88 S Ct 353, 19 L Ed 2d 426), was accorded the *Mine Workers' plan* of hiring an attorney on a salary basis to represent its members and their dependents in connection with claims for benefits under the Illinois workmen's compensation act. We do not agree. The narrow question in *Mine Workers* was whether "the operative portion" of the scrutinized Illinois decree, prohibiting "any financial connection between the attorney and the union," and such other parts of the decree as might be viewed as forbidding that "connection," passed muster under the First and Fourteenth Amendments. The Supreme Court ruled negatively and, as in 1964 *Brotherhood,* vacated the Illinois judgment and decree with remand for further consistent proceedings. The 1968 decretal judgment includes no such prohibition, nor does the Virginia decree of June 13, 1966.

Here we decline to extend or apply *Mine Workers* to our question; a question which in 1965 was sent back to the Jackson circuit for consistency with the 1964 *Brotherhood* case—that only.

The 1968 decretal judgment, a copy of which we have appended, is affirmed. No costs.

T. E. BRENNAN, C. J., and DETHMERS and KELLY, JJ., concurred with BLACK, J.

APPENDIX

(Decretal Judgment Entered May 27, 1968, by the Jackson County Circuit Court)

"This court having heretofore and on the 14th day of September, 1962, entered its decree in favor of

plaintiff and against defendants in this cause and said decree having been appealed to the Supreme Court of Michigan and having been remanded to this court for proceedings, not inconsistent with the decision of the United States Supreme Court in the case of *Commonwealth of Virginia, ex rel. Virginia State Bar,* v. *Brotherhood of Railroad Trainmen,* and plaintiff having filed motion to enter judgment, to which motion a copy of said proposed judgment was attached and the court having heard the arguments of counsel, and having duly considered said motion and proposed judgment and being fully advised in the premises,

"Therefore, on motion of counsel for plaintiff, it is ordered and adjudged that defendants herein be, and they are now permanently restrained and enjoined from giving or furnishing legal advice to its members or their families; from informing any lawyer or lawyers that an accident has been suffered by a member or non-member of the said Brotherhood and furnishing the name and address of such injured or deceased person for the purpose of obtaining legal employment for any lawyer; from stating or suggesting that a recommended lawyer will defray expenses of any kind or make advances for any purpose to such injured persons or their families pending settlement of their claim; from controlling, directly or indirectly, the fees charged or to be charged by any lawyer; from accepting or receiving compensation of any kind, directly or indirectly, for the solicitation of legal employment for any lawyer, whether by way of salary, commission or otherwise; from sharing in any manner in the legal fees of any lawyer or countenancing the splitting of or sharing in such fees with any layman or lay agency; and from sharing in any recovery for personal injury or death by gift, assignment or otherwise."

Adams, J. (*dissenting*). This action was begun on January 28, 1959 by the State Bar of Michigan

charging the Brotherhood of Railroad Trainmen, through the operation of its Legal Aid Department (subsequently renamed Department of Legal Counsel), with unlawfully and improperly soliciting large numbers of cases and claims of members of the Brotherhood of Railroad Trainmen and directing those cases to Regional Counsel Henslee and associates in Chicago, Illinois.

The defendants admitted that in many instances, but not in all, a "member of the defendant Trainmen calls upon, contacts, or in some other manner explains to an injured member employee, or his bereaved family, the advisability of obtaining a lawyer, or the opinion of a lawyer, and recommends that they consult with the legal counsel designated, and further recommends that the legal counsel be retained if a lawyer is to be retained."

The issue as framed by Mr. Phillip C. Kelly, acting as attorney for the State Bar, was "whether or not a large volume of these cases arising in Michigan reached the office of Regional Counsel Henslee and associates in Chicago over a period of several years during the operation of this legal department."

On June 27, 1961, a hearing was held before the circuit judge at which time Mr. David J. Walsh, supervisor of the clearinghouse for the Claims Research Bureau, General Claims Division, of the Association of American Railroads, testified. The testimony of Mr. Walsh consisted of records of FELA claims compiled by the Association of American Railroads and tended to establish that during the period July 1, 1953, through the year 1960 there were 482 such cases and that 218 were handled by the Henslee firm.

Additional history of this case is contained in *State Bar of Michigan* v. *Brotherhood of Railroad*

*Trainmen* (1965), 374 Mich 152, and in the opinion of Justice Black upon this present appeal.

In *Brotherhood of Railroad Trainmen* v. *Virginia, ex rel. Virginia State Bar* (1964), 377 US 1 (84 S Ct 1113, 12 L Ed 2d 89), the United States Supreme Court said (p 8):

"We hold that the First and Fourteenth Amendments protect the right of the members through their Brotherhood to maintain and carry out their plan *for advising workers who are injured to obtain legal advice and for recommending specific lawyers.* Since the part of the decree to which the Brotherhood objects infringes those rights, it cannot stand; and to the extent any other part of the decree forbids these activities it too must fall. And, of course, lawyers accepting employment under this constitutionally protected plan have a like protection which the State cannot abridge." (Emphasis added.)

On December 5, 1967, the United States Supreme Court spoke again in the case of *United Mine Workers of America, District 12* v. *Illinois State Bar Association* (1967), 389 US 217 (88 S Ct 353, 19 L Ed 2d 426). In that case the United States Supreme Court held (pp 221, 222):

"We hold that the freedom of speech, assembly, and petition guaranteed by the First and Fourteenth Amendments gives petitioner the right to hire attorneys on a salary basis to assist its members in the assertion of their legal rights."

I agree with Justice Black that when the United States Supreme Court denied certiorari in 1967 to review *Brotherhood of Railroad Trainmen* v. *Commonwealth of Virginia, ex rel. Virginia State Bar* (1966), 207 Va 182 (149 SE2d 265), that act made no precedent. I disagree with Justice Black that the decretal judgment entered May 27, 1968, by the

Jackson County Circuit Court is consistent with 1964 *Brotherhood* or 1967 *United Mine Workers.*

Even if the decree could be sustained under the decision in *Railroad Trainmen,* it seems clearly evident that the decree is in plain violation of the holding of the United States Supreme Court in *United Mine Workers.*

I would vacate the judgment for the further reason that this is a chancery case in which the State Bar of Michigan seeks injunctive relief. The State Bar failed to amend or update its complaint upon remand by this Court and it failed to produce any proofs, other than the testimony of Mr. Walsh relating to the period from July 1, 1953 through the year 1960. Neither the trial court nor this Court should afford injunctive relief upon proofs as stale as these, the very most recent of which relate to a period 10 years ago. Furthermore, the evidence is wholly inadequate to sustain the injunctive relief which was granted.

We have repeatedly cautioned against granting injunctive relief prior to full hearing and clear and convincing proofs. See: *Cross Company* v. *UAW Local No 155 (AFL-CIO)* (1963), 371 Mich 184; *School District for the City of Holland* v. *Holland Education Association* (1968), 380 Mich 314.

I would reverse the trial court and vacate the decretal judgment which it entered.

T. M. KAVANAGH and T. G. KAVANAGH, JJ., concurred with ADAMS, J.