607 N.W.2d 85 (2000)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Keith Edward GRONEWALD, Defendant-Appellant.
Docket No. 114740, COA No. 205907.
Supreme Court of Michigan.
March 13, 2000.
On order of the Court, the delayed application for leave to appeal from the March 26, 1999 decision of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.
MARILYN J. KELLY, J., dissents and states as follows:
I would grant leave to appeal. This case involves multiple crimes arising from the same transaction. Defendant was convicted *86 and received multiple sentences.[1] The significant question raised is whether the proportionality of his sentences should be assessed on the basis of the total of his minimum sentences rather than on each minimum sentence, individually.
Defendant, twenty years of age and with no prior felony convictions, was sentenced to two consecutive terms for carjacking and armed robbery, totaling a minimum of twenty years of imprisonment. The guidelines' range for armed robbery was three to eight years. In exceeding the range, the trial judge only vaguely articulated his basis for the departure.
Defendant's accomplice, arguably the leader in the enterprise, was given one term of a minimum of 7 ½ years.
We have never addressed this question with respect to cases where the sentences are not mandatory.[2] In People v. Milbourn,[3] we held that the punishment must fit both the offense and the offender. Additionally, in People v. McFarlin,[4] we stated:
The modern view of sentencing is that the sentence should be tailored to the particular circumstances of the case and the offender in an effort to balance both society's need for protection and its interest in maximizing the offender's rehabilitative potential. While the resources allocated for rehabilitation may be inadequate and some persons question whether rehabilitation can be achieved in the prison setting, this view of sentencing is the present policy of the state. [389 Mich. at 574, 208 N.W.2d 504.]
Our refusal to analyze the proportionality of the aggregate of the minimum sentences can leave unchecked extremely harsh results.[5] It encourages the "warehousing" of felons such as this defendant and, also, fails to consider a defendant's rehabilitative potential.
This issue is jurisprudentially significant. It also has grave social consequences, given that today we are incarcerating a larger percentage of our citizens *87 than ever before in Michigan's history.[6] According to Justin Brooks, a member of the State Bar of Michigan Prisons & Corrections Section, Michigan's rate of incarceration is 443 per 100,000 people. That rate is surpassed only in Texas and Georgia.[7]
When we review sentences individually, rather than in the aggregate as well, we essentially ignore the "real world" difference between a ten and a twenty-year term of incarceration. Accordingly, I would grant leave so that we could thoroughly consider this apparent anomaly.
CORRIGAN, J., concurs and states as follows:
I concur in the denial of defendant's application for leave to appeal. Defendant may not aggregate his consecutive sentences of ten to twenty years each for armed robbery, M.C.L. § 750.529; MSA 28.797, and carjacking, M.C.L. § 750.529a; MSA 28.797(a), for purposes of Milbourn[1] sentencing review.
On September 8, 1996, defendant and codefendant Daniel Ellesin carjacked complainant Jeremy Anderson's van. Defendant held a knife to Anderson's back and told him to be quiet. Ellesin then entered the van and had Anderson drive to a remote wooded area. Defendant and Ellesin both assaulted Anderson, and Ellesin took two gold rings and the van keys. Defendant and Ellesin then drove away in the van, leaving Anderson alone in the heavily wooded area at night. Anderson was beaten so badly that his right eye was swollen shut and two teeth had gone through his lips, requiring stitches.
A jury found defendant guilty of armed robbery, carjacking, and carrying a concealed weapon, M.C.L. § 750.227; MSA 28.424.[2] In sentencing defendant to consecutive ten- to twenty-year terms for armed robbery and carjacking,[3] the trial court departed from the three- to eight-year guidelines range for armed robbery.[4] While the trial court did not state its reasons for departure on the record, the court indicated on the sentencing information report (SIR) that it exceeded the guidelines because defendant "is dangerous & his future behavior is highly suspect."
On appeal, defendant challenged the guidelines departure and the proportionality of his sentences. The Court of Appeals concluded that, while the reasons for departure stated in the SIR were vague, the record provided information from which it could deduce the trial court's reasons for departure, including: home invasion and larceny charges that had been dropped in exchange for a plea bargain in another case, another home invasion charge that was pending, the severity of Anderson's injuries, and defendant's history of drug and alcohol abuse.[5] Further, the Court found defendant's sentences proportionate and noted that their consecutive nature did not affect the application of the proportionality principle to defendant's individual sentences. Defendant now seeks leave to appeal to this Court.
In People v. Warner, 190 Mich.App. 734, 736, 476 N.W.2d 660 (1991), the Court of *88 Appeals held that each consecutive sentence must be viewed individually: "The fact that they exceed the maximum allowable punishment for either of the offenses when viewed in the aggregate does not render them excessive. The consecutive nature of the sentences does not change the maximum statutory penalty for either of the offenses." In People v. Miles, 454 Mich. 90, 559 N.W.2d 299 (1997), this Court found persuasive Warner's separate consideration of each sentence for purposes of proportionality review. Miles thus held "that a sentencing court need not consider the length of a consecutive or concurrent mandatory sentence when setting an indeterminate sentence." Id., p. 95, 559 N.W.2d 299.
The dissent fails to offer a persuasive reason to depart from these prior decisions. The dissent suggests that the Warner Miles rule should not apply to discretionary consecutive sentences. While Warner and Miles involved mandatory consecutive sentences, that factor was not deemed dispositive in either case. The dissent offers no principled basis for distinguishing discretionary from mandatory sentences for purposes of individual sentence review. Moreover, the Court of Appeals has applied the Warner Miles rule to discretionary consecutive sentences. See People v. St. John, 230 Mich.App. 644, 585 N.W.2d 849 (1998).[6]
The dissent also contends that reviewing consecutive sentences individually rather than in the aggregate encourages "warehousing" of felons and ignores the "real world" effect of consecutive sentencing. The dissent, however, ignores the fact that felons such as defendant have been convicted of two separate offenses for which the Legislature has seen fit to allow (or, in some cases, require) consecutive sentencing. The dissent fails to acknowledge this reality and instead treats the two sentences as one for purposes of proportionality review. Any concerns that consecutive sentencing leads to "warehousing" should be directed to the Legislature, since that body has the authority to provide for or eliminate consecutive sentencing.[7]
MICHAEL F. CAVANAGH, J., states as follows:
I concur with the dissenting statement of Justice Kelly in this matter. I do so separately only to comment on the relatively recent practice of this Court's majority to, with increasing frequency, delegate to one or another of its members the task of responding to any dissent and explaining why a denial of leave is justified in a particular case.
In 1961, Justice Black, dissenting from the majority believing it "interesting" that the United States Supreme Court denied certiorari in a particular case, stated that "it has not as yet come to pass that denial *89 of an application for certiorari or appeal [to this Court] amounts to another kind of stare decisis, `conclusive' or otherwise." Williams v. Detroit, 364 Mich. 231, 288, 111 N.W.2d 1 (1961). Justice Black would be surprised that some twenty-nine years later, it may come to pass that denial of leave to appeal to this Court could become another kind of stare decisis, just as he feared.
Traditionally, a court's refusal to hear a discretionary appeal meant nothing other than that the court would not hear that case. As Justice Holmes wrote for a unanimous Court, "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923). Michigan has followed a similar rule, stating that a denial of leave to appeal "means that the Supreme Court expresses no present view with respect to the legal questions dealt with in the opinion of the Court of Appeals." Frishett v. State Farm Mut Automobile Ins Co, 378 Mich. 733 (1966).[1]
Sundry reasons cause the Court to take this view of denials of leave to appeal. The reasons causing the United States Supreme Court to take a similar view were capably summarized by Justice Frankfurter, and apply equally to our Court:
The sole significance of such denial of a petition for writ of certiorari need not be elucidated to those versed in the Court's procedures. It simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter of "sound judicial discretion." ... A variety of considerations underlie denials of the writ, and as to the same petition different reasons may lead different Justices to the same result.... Narrowly technical reasons may lead to denials. Review may be sought too late; the judgment of the lower court may not be final.... A decision may satisfy all [the] technical requirements and yet may commend itself for review to fewer than four members of the Court. Pertinent considerations of judicial policy here come into play. A case may raise an important question but the record may be cloudy. It may be desirable to have different aspects of an issue further illumined by the lower courts. Wise adjudication has its own time for ripening. [Maryland v. Baltimore Radio Show, 338 U.S. 912, 917-918, 70 S.Ct. 252, 94 L.Ed. 562 (1950) (citation omitted).]
Further, this Court has recognized that denials of leave to appeal have no precedential value by incorporating this command into our rules of practice and procedure. In them, we provide:
The reasons for denying leave to appeal, required by Const. 1963, art. 6,§ 6, and filed in the clerk's office, are not to be published, and are not to be regarded as precedent. [MCR 7.321(4).]
Despite this, justices of this Court have developed the practice of expressing views on the merits of Court of Appeals opinions or the demerit of any dissent, and attaching those views to their votes to deny leave to appeal. This practice not only flies in the face of the rules this Court has long followed, but it encourages the bench and bar to treat these statements as authority. It is true enough that such expressions are not controlling authority, because opinions *90 not signed by a majority are not binding under stare decisis. People v. Gahan, 456 Mich. 264, 274, 571 N.W.2d 503 (1997). Nonetheless, they will doubtless be used as persuasive authority in the lower courts, because even nonbinding statements from this Court are accorded deference by the lower courts. See People v. Brashier, 197 Mich.App. 672, 678, 496 N.W.2d 385 (1992); see also People v. Emmerich, 175 Mich. App. 283, 286, 437 N.W.2d 30 (1989) (following the three-justice opinion in People v. Howell, 396 Mich. 16, 238 N.W.2d 148 [1976]). Thus, it would come to pass that a denial of leave to appeal could otherwise become stare decisis.
Indeed, not only would attorneys in future factually similar cases be remiss if they failed to employ these statements as authority regarding the merits of the Court of Appeals decision, but they may be bound to advise their clients on the basis of them. An attorney's duty of care to a client requires that the attorney must possess knowledge of plain and elementary principles of law, but the duty does not stop there. In unsettled areas of law, including those areas on which this Court, as a Court, has not commented, attorneys have an obligation to do reasonable research to ascertain relevant legal principles and authorities so that they can instruct their clients. See Smith v. Lewis, 13 Cal.3d 349, 358-359, 118 Cal.Rptr. 621, 530 P.2d 589 (1975) (otherwise overruled, In re Marriage of Brown, 15 Cal.3d 838, 851, 126 Cal.Rptr. 633, 544 P.2d 561 [1976]). Thus, an attorney who fails to consider these statements when advising a client would be providing less than complete services to that client, and may be failing to fulfill a legal duty.
The rule that a denial of leave has no precedential value has long been a part of Michigan law, and has served us well. With each statement explaining that denial of leave in a particular case is reasonable, the members of this Court chip away at that rule. Each time a member of this Court finds it necessary to explain the reasonableness of denying leave, whether leave was denied because the record was cloudy or as a matter of judicial policy, or for any other reason, the bench and bar will have reason to rely upon that denial as having legal significance.[2] This practice undermines years of this Court's holdings and its rules of practice and procedure, and will work a fundamental change in the way denials of leave are viewed by the legal community. Because the previous practice of simply denying leave, without the need for any member of this Court to address the merits or elaborate any further than the Court's own order stating that it is not persuaded to review the questions presented, has been practical and has not implied that this Court has taken a view on the merits of the cases denied leave, I would retain it. The new practice suggests that a denial of leave is otherwise stare decisis, and we would fool only ourselves if we believed that the bench and bar will find it merely "interesting."
YOUNG, JR., J., states as follows:
Justice Cavanagh's statement does not address the merits of this application for leave, that duty having been relegated to Justice Kelly. In order to provide a context *91 for the public, I feel compelled to respond.
It is, of course, the prerogative of any justice to issue a statement dissenting from any action taken by this Court. By the same token, it would seem to be an unassailable proposition that any justice aggrieved by a dissenting statement should enjoy the same prerogative. These expressions of dissenting or concurring opinion by individual justices are no more than that and have no precedential value whatsoever. Justice Cavanagh's incitement to the contrary, I vigorously disagree with his suggestion that the bench or bar should in any way rely upon or use the dissenting or concurring statement of a justice as precedent.
As I understand Justice Cavanagh's dissent, he is disturbed by the increasing incidence of concurring statements filed to rebut dissenting statements authored by Justice Kelly and himself. In an institution that is compelled to explain its actions, this seems a truly perverse basis for dissent. Dissenting statements authored by Justices Cavanagh and Kelly have become an invariable feature of the orders issued by this Court since January 1999. Surely, Justice Cavanagh would not dream of attempting to silence his colleagues who take exception to those statements. Therefore, I conclude that there must be some other, unstated, motive for his latest offering.
MARKMAN, J., not participating.
NOTES
[1] Justice Corrigan neglects to mention that before trial, the prosecutor offered Mr. Gronewald a plea agreement whereby he would plead guilty either to carjacking or unarmed robbery. He would receive a maximum minimum sentence of ten years. The trial judge rejected the plea agreement because the judge had a policy not to accept plea agreements.
[2] Justice Corrigan cites this Court's prior decision in People v. Miles, 454 Mich. 90, 559 N.W.2d 299 (1997), for the proposition that there is no distinction between discretionary and mandatory sentences. Although she acknowledges that Miles involved mandatory consecutive sentences only, she opines that the mandatory factor "was not deemed dispositive." I disagree. Miles was presented only with mandatory sentences. We expressed no opinion on whether the rule should be applied to discretionary sentences. The same is true for the Court of Appeals decision in People v. Warner, 190 Mich.App. 734, 476 N.W.2d 660 (1991). Furthermore, I am unpersuaded by the Court of Appeals reasoning in People v. St. John, 230 Mich.App. 644, 585 N.W.2d 849 (1998), because it failed to distinguish or acknowledge the fact that Miles, supra, concerned mandatory sentences only.
[3] 435 Mich. 630, 461 N.W.2d 1 (1990).
[4] 389 Mich. 557, 208 N.W.2d 504 (1973).
[5] Justice Corrigan's statement that "[a]ny concerns that consecutive sentencing leads to `warehousing' should be directed to the Legislature" ignores our prior sentiments in Milbourn, supra, where we stated:

[S]entencing decisions, no less than the myriad other discretionary judicial actions, should be subject to review by our state's appellate courts.
"We find no sound reason for interpreting the applicable constitutional and statutory provisions as carving out an exception to the right of appeal regarding sentencing matters. None of those relevant provisions limit the particular issues subject to appellate review. We therefore conclude that the foregoing constitutional and statutory authority vest appellate courts with the jurisdiction to review all sentencing issues." [Id. at 634-635, 461 N.W.2d 1, quoting People v. Coles, 417 Mich. 523, 535, 339 N.W.2d 440 (1983)].
[6] The Detroit News, Dec. 13, 1999.
[7] Brooks, The politics of prisons, 77 Mich. B J 154, 157, n. 2 (1998).
[1] People v. Milbourn, 435 Mich. 630, 461 N.W.2d 1 (1990).
[2] The trial court rejected a proposed plea agreement before trial. The dissent implies that this fact is somehow important but fails to explain how it is relevant to the sentence review issue before us.
[3] The court imposed a concurrent three- to five-year term for CCW. Defendant does not challenge that sentence on appeal.
[4] The dissent notes that Ellesin received a seven-and-one-half- to fifteen-year sentence. The dissent neglects to mention, however, that Ellesin pleaded guilty to unarmed robbery and, unlike defendant, was not convicted of armed robbery and carjacking.
[5] Unpublished opinion per curiam, issued March 26, 1999 (Docket No. 205907).
[6] The dissent incorrectly asserts that I have cited Miles "for the proposition that there is no distinction between discretionary and mandatory sentences." In fact, my point is that neither Miles nor Warner relied on the mandatory nature of consecutive sentences in deciding that they should be reviewed individually rather than in the aggregate. Neither Miles nor Warner supports the dissent's attempt to import into our sentencing review jurisprudence an arbitrary distinction between mandatory and discretionary consecutive sentences.
[7] The dissent asserts that directing concerns about consecutive sentences to the Legislature is inconsistent with our jurisdiction to review sentencing issues under Milbourn. The dissent either misunderstands my statement or Milbourn. This Court's authority to review sentences under Milbourn does not supplant the Legislature's authority to provide for or eliminate consecutive sentencing. It is the Legislature's decision to allow or require consecutive sentencing, not this Court's review of the individual sentences imposed, that leads to longer aggregate periods of incarceration than the dissent apparently prefers. Thus, the dissent essentially wants to manipulate Milbourn sentencing review in such a way as to second-guess the Legislature's policy decision in favor of consecutive sentencing. The dissent also fails to recognize that each consecutive sentence imposed is subject to Milbourn review on an individual basis.
[1] This rule has long been a part of our state's law, and has been invoked with some regularity. See Malooly v. York Heating & Ventilating Corp., 270 Mich. 240, 247, 258 N.W. 622 (1935) ("the denial of the writ of certiorari is not equivalent of an affirmation of the decree sought to be reviewed"); Great Lakes Realty Corp. v. Peters, 336 Mich. 325, 328, 57 N.W.2d 901 (1953); State Bar v. Brotherhood of RR Trainmen, 383 Mich. 201, 208, 174 N.W.2d 811 (1970) rev'd on other grounds sub nom United Transportation Union v. State Bar of Michigan, 401 U.S. 576, 91 S.Ct. 1076, 28 L.Ed.2d 339 (1971); Tebo v. Havlik, 418 Mich. 350, 363, n. 2, 343 N.W.2d 181 (1984) ("A denial of leave to appeal has no precedential value").
[2] Dissenting statements are also attached to denials of leave, but they do not pose the same risk of becoming authority that concurrences to denials pose. Though neither are signed by a majority of the Court, there is no chance that the reasoning of a dissent will be relied upon by lower courts because whatever the merits of the dissenting statement, the position it advocated was not adopted by the Court. Also, then, dissenting statements are unaffected by MCR 7.321.

In contrast, the reasoning in a concurrence explains the action taken by the Court, regardless of how many members of the Court actually held the view advocated by the concurrence. Therefore, lower courts and the bar, in deference to this Court and in the never-ending search for legal authority to support a case, will likely begin to use concurrences as authoritative statements of law from this Court.