PHILLIPS v CITY OF FLINT

1. CONSTITUTIONAL LAW—FIRST AMENDMENT RIGHTS—PUBLIC EM-
   PLOYEES—RESTRICTING POLITICAL ACTIVITY.
   A state may constitutionally restrict the political activity of its
   employees since it has interests as an employer in regulating
   the speech of its employees that differs significantly from those
   it possesses in connection with regulation of the speech of the
   citizenry in general.

2. CONSTITUTIONAL LAW—FIRST AMENDMENT RIGHTS—PUBLIC EM-
   PLOYEES—RESTRICTING POLITICAL ACTIVITY—PRECISENESS OF
   LAW—BALANCING INTERESTS.
   The laws regulating activities of public employees which are
   protected by the First Amendment must be precise; a balance
   must be arrived at between the interests of the employee as a
   citizen in commenting upon matters of public concern and the
   interest of the state as an employer in promoting the efficiency
   of the public services it performs through its employees.

3. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—FIRST AMEND-
   MENT RIGHTS—CHARTERS—PUBLIC EMPLOYEES—RESTRICTING PO-
   LITICAL ACTIVITY—SUBSTANTIAL OVERBREADTH—ACTIVITY UNRE-
   LATED TO JOB—REGULATIONS—ADMINISTRATIVE PROCEDURES.
   Sections of a city charter which prohibit public employees from
   making contributions of "money or active service" to candi-
   dates or causes on the city ballot and proscribe solicitation by
   them of contributions for any political purpose whatever are
   substantially overbroad, and therefore incapable of constitu-
   tional interpretation and narrowing by declaratory judgment
   where the language on its face prevents the public employees
   from supporting or opposing issues which may be of vital
   concern to them as members of the community, and where the

REFERENCES OF POINTS IN HEADNOTES
[1–4] 16 Am Jur 2d, Constitutional Law § 348.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
   cal Subdivisions §§ 113, 245.
   Governmental control of actions or speech of public officers or
   employees in respect of matters outside the actual performance of
   their duties. 163 ALR 1358.

sections contain no regulations, which define vague terms and describe specifically those activities which the charter proscribes, or administrative procedures, by which a review board administers the law and provides a method by which employees can determine in advance the validity of intended political activity; for purposes of adjudicating his First Amendment rights a public employee must be treated as a member of the general public when his political activities are unrelated to his job responsibilities.

4. CONSTITUTIONAL LAW—FIRST AMENDMENT RIGHTS—PUBLIC EMPLOYEES—MUNICIPAL EMPLOYEES—POLITICAL ACTIVITIES—PROSCRIBABLE OR NON-PROSCRIBABLE ACTIVITIES—PARTISAN OR NON-PARTISAN ACTIVITIES—GOVERNMENT NEEDS—PRIVATE RIGHTS.

The political activities of municipal employees cannot be deemed "proscribable" or "non-proscribable" by a determination of whether those activities are "partisan" or "non-partisan"; the proper inquiry is one of balancing government needs and private rights.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 June 14, 1974, at Lansing. (Docket No. 17960.) Decided January 7, 1975.

Complaint by Donald L. Phillips against the City of Flint for a declaration that two sections of the Flint City Charter which prohibit certain types of political activity by city employees are unconstitutional, or, in the alternative, for a declaration of those political activities not proscribed by the sections. The trial court declared certain acts permissible under the sections. Defendant appeals. Affirmed and modified.

*Charles A. Forrest, Jr.,* for plaintiff.

*Patrick H. Hynes,* for defendant.

Amicus Curiae: Michigan State AFL-CIO and Michigan State Fire Fighters Union, by *Marston, Sachs, O'Connell, Nunn & Fried, P. C.* (by *Theodore Sachs* and *Charles Looman).*

Before: QUINN, P. J., and V. J. BRENNAN and CARLAND,* JJ.

V. J. BRENNAN, J. Plaintiff, Donald Phillips, is an employee of defendant City of Flint and is president of the City employees' union. On June 15, 1973, he brought an action to enjoin the defendant from enforcing sections 254 and 255 of the Flint City Charter which prohibit city employees from engaging in certain types of political activity.

Section 254 requires:

"No officer or employee of the City shall discharge, degrade or promote or in any manner change the official rank or compensation of any officer or employee or promise or threaten to do so for giving or withholding or neglecting to make any contribution of money or other valuable thing for any party or political purpose or for refusal or neglect to render any party or political service, *nor shall any employee contribute in money or active service to the promotion of any candidate or cause appearing on the City ticket or election."* (Emphasis added.)

Section 255 provides:

"No officer or employee of the City shall directly or indirectly solicit or receive or be in any manner concerned in soliciting or receiving any assessment, subscription or contribution for any political party or political purpose whatever; *nor shall any person solicit, directly or indirectly or be in any manner concerned in soliciting any assessment, contribution or payment for any political purpose whatever for any officer or employee in the classified service of this City."* (Emphasis added.)

At a July 11, 1973 trial, plaintiff claimed that he desired to "openly speak in favor of certain council

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

candidates, circulate literature in favor of certain candidates, put up signs, and generally promote certain candidates for the City Council election". He further wanted "to speak to the membership at the union meetings, speak publicly and * * * contribute financially to candidates, through the union". Plaintiff stated that he was prevented from doing these things because he feared being prosecuted for a violation of Sections 254 and 255. Flint Charter Section 257 subjects violators of these sections to dismissal from public employment and to criminal misdemeanor charges.

Plaintiff sought a declaratory judgment that the two sections were violative of the First Amendment, as applied by the Fourteenth Amendment, on the grounds of vagueness and overbreadth. If the court considered the sections to be constitutional, plaintiff sought, in the alternative, a declaration of those activities which were not proscribed.

On July 25, 1973, the Genesee County Circuit Court issued a declaratory judgment that

" * * * plaintiff and other City employees of the City of Flint may engage, in hours other than those of their employment, in *non-partisan* political activity in the same manner as such rights are guaranteed to every American citizen under the First Amendment of the United States Constitution * * * " (Emphasis in original.)

Defendant raises as the sole appellate issue before this Court, "Are Sections 254 and 255 of the Charter of the City of Flint so vague and overbroad as to be unconstitutional"? Having examined the relief requested by plaintiff and the order issued by the trial court, however, we find that the constitutionality of Sections 254 and 255 was not decided by the court below. Plaintiff sought either

a declaration of unconstitutionality or a declaration of permitted acts. A reading of the trial court's opinion convinces us that, while the court had severe doubts as to the constitutionality of the challenged sections, it did not rule on their validity. Clearly, the ruling cited above is only a declaration of acts permitted by the challenged sections. Plaintiff has not raised the issue of the sections' constitutionality with a cross-appeal.

Notwithstanding this, we feel constrained by the facts of this case to consider the constitutionality of the challenged portions of Sections 254 and 255. We find these portions to be substantially overbroad. Substantial overbreadth, a doctrine recently enunciated by the United States Supreme Court in *Broadrick v Oklahoma,*[1] renders the challenged acts incapable of constitutional interpretation and narrowing by declaratory judgment.[2] For this reason, we affirm with the modifications detailed below.

Defendant, citing *Broadrick, supra,* argues that the challenged sections can be constitutionally narrowed on a case-by-case basis. In *Broadrick,* the Supreme Court commented, "Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute. [Citation omitted.]"[3] We understand the Supreme Court to mean that a limiting construction "could be placed" on a challenged law only where there has been substantial prior construc-

---

[1] 413 US 601; 93 S Ct 2908; 37 L Ed 2d 830 (1973).

[2] For a discussion of a court's ability to save a challenged law by construction, see Note, The First Amendment Overbreadth Doctrine, 83 Harv L Rev 844, 891–910 (1970). The Supreme Court apparently adopted its "substantial overbreadth" theory from this article. It would now seem that only when a law is substantially overbroad, it may not be saved by a case-by-case trimming of unconstitutional applications.

[3] 413 US 601, 613; 93 S Ct 2908, 2916; 37 L Ed 2d 830, 841 (1973).

tion of that law. First, the cases cited by the Court for the above principle all involve prior constructions. *Dombrowski v Pfister*[4] required courts to examine a statute "as of the time its jurisdiction is invoked, rather than some hypothetical future date" by means of prior authoritative constructions. *Cox v New Hampshire*[5] dealt with a vagueness attack only, and the Court analyzed the challenged law as it had been construed by the state courts. In *United States v Thirty-Seven Photographs*,[6] the Court did not reach the question of constitutionality. The Court "saved" a law from due process objections by construing into it procedures which had been already adopted by lower courts. Most importantly for our purposes, the Court stated that it would not completely rewrite a statute to save it. While such a rewriting was not necessary in *Thirty-Seven Photographs,* for reasons we will discuss below, it is clearly required here.

Second, the *Broadrick* case itself relies on the fact that the challenged law had been authoritatively construed and limited to specified behavior. Finally, in a First Amendment case, an *ex post facto* construction cannot vitiate the prior "chill" of an overbroad law on those who challenge it. *Dombrowski, supra,* demands that a later construction be applied to prior acts only when fair warning exists. We can see no such warning here.

The constitutionality of the governmental practice of restricting the political activity of its employees has been long recognized.[7] As the Supreme

---

[4] 380 US 479, 490; 85 S Ct 1116, 1123; 14 L Ed 2d 22, 31 (1965).

[5] 312 US 569; 61 S Ct 762; 85 L Ed 1049 (1941).

[6] 402 US 363; 91 S Ct 1400; 28 L Ed 2d 822 (1971).

[7] *United Public Workers v Mitchell,* 330 US 75, 96; 67 S Ct 556, 568; 91 L Ed 754 (1947); *Ex parte Curtis,* 106 US 371; 1 S Ct 381; 27 L Ed 232 (1882).

Court noted in *Pickering v Board of Education,*[8] "it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."[9]

Regardless of this difference, laws regulating activities of the public employees which are protected by the First Amendment must still be precise.[10] As the Court said in *Pickering, supra,* "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees".

We recognize defendant's interest in insulating its civil servants from political pressures and, conversely, in preventing its employees from developing enough influence to elect the public officials with whom they will be bargaining over conditions of employment. For this reason, Section 254 prohibits contributions of "money or active service" to candidates or causes on the *City* ballot, and Section 255 proscribes solicitation of contributions "for any political purpose whatever".[11] As defendant claims, the two most recent Supreme Court cases in point, *United States Civil Service Commis-*

---

[8] 391 US 563; 88 S Ct 1731; 20 L Ed 2d 811 (1968).

[9] *Id* at 568; 1734; 817.

[10] *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972); *Pickering v Board of Education, supra; Keyishian v Board of Regents,* 385 US 589; 87 S Ct 675; 17 L Ed 2d 629 (1967); *Soof v City of Highland Park,* 30 Mich App 400; 186 NW2d 361 (1971).

[11] We note here that defendant's brief concedes the unconstitutionality of the following portion of Section 255, not at issue here:

"No officer or employee of the city shall directly or indirectly solicit or receive or be in any manner concerned in soliciting or receiving any assessment, subscription or contribution for *any political party or political purpose* whatever; * * * ." (Emphasis added.)

*sion v National Association of Letter Carriers*[12] and *Broadrick v Oklahoma, supra,* upheld statutes with similar language. However, in *Letter Carriers,* which upheld § 9 of the Hatch Act,[13] the Supreme Court relied on the existence of numerous regulations which defined indefinite terms and described specifically those activities which the act proscribed. In *Broadrick,* the Court, in ruling valid Oklahoma's "little Hatch Act",[14] pointed to an administrative procedure by which a review board had provided an administrative gloss on the challenged law. The Oklahoma review board also provided a method by which employees could determine in advance the validity of intended political activity.

In both *Letter Carriers* and *Broadrick,* only partisan political activity was deemed proscribed. The Supreme Court upheld the constitutionality of this proscription.

Here, there is no administrative or judicial gloss on the challenged statutes. Here there is no administrative advisory mechanism. Without such limitation, the contributions of "active service" to a "candidate" or "cause" bespeaks broad application. This language on its face prevents Flint public employees from supporting or opposing such measures as special assessments, zoning ordinances, millage proposals, annexations, school budgets, and health and housing laws. Such issues may be of vital concern to public employees as members of the Flint community. These "causes" exhibit none of the dangers which defendant seeks to prevent. Where the political activities of a public employee are unrelated to his job responsi-

---

[12] 413 US 548; 93 S Ct 2880; 37 L Ed 2d 796 (1973).

[13] 80 Stat 378; 5 USC 7324(a)(2); 62 Stat 683; 18 USC 1901–1923.

[14] § 818 of the Oklahoma Merit System of Personnel Administration Act, 74 OS 1971, § 801 *et seq.*

bilities, he must be treated for purposes of adjudicating his First Amendment rights as a member of the "general public".[15]

As an amicus curiae brief filed by the Michigan State AFL-CIO and State Firefighters Union notes, the effect of city ballot issues may be direct. MCLA 423.239; MSA 17.455(39) provides that, in the compulsory arbitration of labor disputes involving police and firemen, the arbitration panel consider as a factor "the financial ability of the unit of government to meet [salary] costs". This ability will surely be affected by such ballot "causes" as bond issues, millage and special assessments. "Active service" may, under the law, include wearing campaign buttons or involvement in a citizens candidate-rating committee. The law would apparently allow a public employee to work in a petition drive and campaign to put an individual or issue on the city ballot but prevent campaigning once the issue or candidate was on the ballot.

American jurisprudence contains a long history of restrictions on solicitation of campaign funds by or from public employees.[16] A public employee may be forced to contribute by the knowledge that his job or promotion may depend on the size of his donation. Section 255, however, does not limit solicitation to local elections, nor does it limit it to working hours. It would apparently proscribe an employee who is raising funds to organize a petition drive seeking a rate change from the Public Service Commission.

One could posit numerous other applications of Sections 254 and 255 which limit First Amendment rights without any beneficial effect on the Flint Civil Service. It will suffice to say that legis-

---

[15] *Pickering v Board of Education, supra,* fn 4.

[16] *Ex parte Curtis, supra,* fn 7.

lative rewriting and narrowing is clearly necessary. To this end, we take this opportunity to comment on the major defect of the trial court's declaratory judgment. From the wording of that judgment, it appears that the court read *Letter Carriers, supra,* and *Broadrick, supra,* to say that government may proscribe partisan but not non-partisan activities by public employees. Plaintiff also concentrated on the partisan—non-partisan distinction.

Our reading of *Broadrick, Letter Carriers* and *UPW v Mitchell*[17] convinces us that the Supreme Court has never definitively ruled on whether non-partisan political activities of public employees can be constitutionally proscribed. In each case, the law upheld by the Court proscribed only partisan activity. No question arose as to non-partisan conduct.

We feel that dividing political activities of public employees into categories of "proscribable" and "non-proscribable" cannot be done by dividing them into "partisan" and "non-partisan". The proper inquiry is a balancing of government needs and private rights.

Using a balancing approach, it is clear that the partisan—non-partisan analysis makes much more sense at a state or national level than at a municipal level. Prohibiting involvement by state and Federal employees in party politics avoids wholesale changes in the civil service with each electoral change. It also prevents groups of public employees beholden to one political party.

At the municipal level, the partisan—non-partisan analysis breaks down. Most elections are non-partisan in the sense that candidates are not Democrats or Republicans. The danger of civil

---

[17] *Supra,* fn 7.

servants beholden to a candidate remains. The danger of public employees getting together to elect public officials who will favor them at contract time is greater than at a state or national level. A more useful analysis may be one which examines the office involved and the employees whose jobs are related to that office. Additionally, support for issues should be distinguished from support for candidates. The evils of employee political involvement feared by defendant are rarely present in referenda, bond issues, and other ballot issues, while the direct interest of the public employee as a citizen is more obvious.

A rewriting of Sections 254 and 255 of the Flint City Charter must thus be based on a detailed determination of what dangers the city seeks to control and of what rights it must guarantee.

Affirmed as modified.

All concurred.