PEOPLE v POSNER

PEOPLE v KEANE

1. CONSTITUTIONAL LAW—STATUTES—FIRST AMENDMENT RIGHTS—UN-
CONSTITUTIONAL APPLICATION.

An exception is permitted in First Amendment cases to the
traditional rule that a person to whom a statute may constitu-
tionally be applied will not be heard to challenge that statute
on the ground that it may conceivably be applied unconstitu-
tionally to others in other situations not before the court.

2. CONSTITUTIONAL LAW—STATUTES—FIRST AMENDMENT RIGHTS—RE-
STRICTION ON RIGHTS—NEEDS OF SOCIETY.

The First Amendment needs breathing space and statutes at-
tempting to restrict or burden the exercise of First Amendment
rights must be narrowly drawn and represent a considered
legislative judgment that a particular mode of expression has
to give way to other compelling needs of society.

3. CONSTITUTIONAL LAW—STATUTES—CHALLENGE OF CONSTITUTIONAL-
ITY—STANDING TO ASSERT.

Attacks on overly broad statutes in the First Amendment area
may be made with no requirement that the person making the
attack demonstrate that his own conduct could not be regulated
by a statute drawn with the requisite narrow specificity; liti-
gants are permitted to challenge a statute not because their
own rights of free expression are violated, but because of a
judicial prediction or assumption that the statute's very exis-

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 119 *et seq.*
73 Am Jur 2d, Statutes §§ 433–435.
[2] 16 Am Jur 2d, Constitutional Law § 341 *et seq.*
73 Am Jur 2d, Statutes §§ 199, 346.
[3] 16 Am Jur 2d, Constitutional Law § 119 *et seq.*
73 Am Jur 2d, Statutes § 346.
[4] 73 Am Jur 2d, Statutes §§ 199, 346.
[5, 6] 73 Am Jur 2d, Statutes § 346.
[7] 16 Am Jur 2d, Constitutional Law § 382 *et seq.*

tence may cause others not before the court to refrain from constitutionally protected speech or expression.

4. CONSTITUTIONAL LAW—STATUTES—FIRST AMENDMENT—OVERBROAD STATUTES—LIMITED CONSTRUCTION—EX POST FACTO APPLICATION.

Facial overbreadth should not be invoked when a limiting construction has been or could be placed on a First Amendment statute, the constitutionality of which is challenged; in a First Amendment case an *ex post facto* construction cannot vitiate the prior chill of an overbroad law on those who challenge it.

5. CONSTITUTIONAL LAW—VAGUE STATUTES—NOTICE OF PROHIBITED ACTIVITY—DUE PROCESS REQUIREMENTS.

A statute which either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of the law; a law fails to meet the requirements of due process if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide without any legally fixed standards what is prohibited and what is not in each particular case.

6. CONSTITUTIONAL LAW—STATUTES—FIRST AMENDMENT RIGHTS—UN-AUTHORIZED PRACTICE OF LAW—OVERBROAD STATUTES—NARROW CONSTRUCTION—UNCONSTITUTIONAL STATUTES.

Statutes regulating the unauthorized practice of law, solicitation, and lay intermediaries must fall to the extent that they impinge upon First Amendment rights of freedom of speech, petition, and association; a statute prescribing a punishment for soliciting a person injured as a result of an accident to employ counsel for the purpose of that solicitation must be declared unconstitutional where it is so overbroad and the possibility of a narrowing construction so limited that it cannot be saved as it is presently written (MCLA 750.410; MSA 28.642).

7. CONSTITUTIONAL LAW—STATUTES—FIRST AMENDMENT PROTECTION —UNCONSTITUTIONALLY OVERBROAD STATUTES.

Collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment; however, that right would be a hollow promise if courts could deny associations or workers or others the means of enabling their members to meet the cost of legal representation, and a statute which, on its face, prohibits such constitutionally protected conduct and is not readily subject to a

narrowing or saving construction is unconstitutionally over-
broad (MCLA 750.410; MSA 28.642).

Appeal from Recorder's Court of Detroit, Henry
Heading, J. Submitted June 17, 1977, at Detroit.
(Docket Nos. 29670, 29819.) Decided October 11,
1977. Leave to appeal applied for.

Samuel Posner, Noel Keane and others were
indicted by a Wayne County Citizens Grand Jury
on charges of conspiracy to solicit personal injury
claims. Defendants Posner and Keane filed mo-
tions to dismiss the indictments. Motions denied.
Those defendants appeal by leave granted. Re-
versed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Paul S. Ter-
anes,* Assistant Prosecuting Attorney, for the peo-
ple.

*Lippitt, Harrison, Perlove, Friedman & Zack,* for
defendant Keane.

*Posner, Posner & Posner,* for defendant Posner.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN
and F. J. BORCHARD,* JJ.

N. J. KAUFMAN, J. On April 10, 1973, the Wayne
County Citizens Grand Jury indicted defendants
and others on a charge of conspiracy to solicit
personal injury claims in violation of MCLA
750.410; MSA 28.642. Defendants were bound over
for trial March 17, 1975.

Defendants filed motions to dismiss the indict-
ments, alleging that the statute under which they
were indicted was unconstitutional. Detroit Re-

* Circuit judge, sitting on the Court of Appeals by assignment.

corder's Court Judge Henry Heading denied the motions May 28, 1976. Judge Heading also denied defendants' motions for rehearing.

Upon certification of the issues raised by defendants by the trial court, defendants filed application for leave to appeal. This Court granted leave.

The statute challenged by defendants originally provided:

"Sec. 410. Any person, firm, copartnership, association or organization of any kind, either incorporated or unincorporated, or any of the officers, agents, servants, employees, or members of any such person, firm, copartnership, association or organization of any kind, either incorporated or unincorporated, or of any division, bureau or committee of such association or organization, either incorporated or unincorporated, who shall directly or indirectly, individually or by agent, servant, employee, or member solicit any person injured as the result of an accident, his administrator, executor, heirs or assigns, his guardian, or members of the family of the injured person, for the purpose of representing such person in making claim for damages or prosecuting any action or causes of action arising out of any personal injury claim against any other person, firm or corporation, or to employ counsel for the purpose of such solicitation, shall be guilty of a misdemeanor, and shall upon conviction thereof, if a natural person, be punished by a fine not to exceed $500.00, or by imprisonment in the county jail for a term not to exceed 6 months, or by both such fine and imprisonment, in the discretion of the court. The same penalties shall apply upon conviction to a member of a copartnership, or any officer or agent of any corporation, association or other organization, or any officer or agent, who shall consent to, participate in, or aid or abet any violation of this section upon the part of the copartnership of which he is a member, or of the corporation, association or organization of which he is such an officer or agent. Any contract entered into as a result of such solicitation shall be void: Provided, however, That nothing herein

shall affect an unsolicited contract entered into by any person, firm or corporation with an attorney duly admitted to practice law in this state."

That statute was amended in 1975, by the changes indicated by the italicized language:

"Sec. 410. *(1) A* person, firm, copartnership, association or organization of any kind, either incorporated or unincorporated, or any of the officers, agents, servants, employees, or members of any such person, firm, copartnership, association or organization of any kind, either incorporated or unincorporated, or of any division, bureau or committee of *that* association or organization, either incorporated or unincorporated, who shall directly or indirectly, individually or by agent, servant, employee, or member, solicit *a* person injured as the result of an accident, his administrator, executor, heirs or assigns, his guardian, or members of the family of the injured person, for the purpose of representing *that* person in making *a* claim for damages or prosecuting an action or causes of action arising out of *a* personal injury claim against any other person, firm, or corporation, or to employ counsel for the purpose of *that* solicitation, *is* guilty of a misdemeanor, and shall upon conviction thereof, if a natural person, be punished by a fine not to exceed $500.00, or by imprisonment * * * for a term not to exceed 6 months, or both. * * * The same penalties shall apply upon conviction to a member of a copartnership, or *an* officer or agent of a corporation, association or other organization, or *an* officer or agent, who shall consent to, participate in, or aid or abet *a* violation of this section upon the part of the copartnership of which he is a member, or of the corporation, association, or organization of which he is such an officer or agent. A contract entered into as a result of such a solicitation *is* void. *This subsection* shall *not* affect an unsolicited contract entered into by *a* person, firm, or corporation with an attorney duly admitted to practice law in this state.

"*(2) Except as otherwise provided by law, administrative rule, or valid legal process, any person, firm or*

*corporation who, for any consideration and without the prior written permission of a patient or his personal representative, furnishes, receives, buys, offers to buy, sells, or offers to sell, directly or indirectly, the identity of the patient or any information concerning the treatment of the patient, including but not limited to information contained in the files or records of a health care facility, health care provider or insurance company, is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or by a fine of not more than $500.00, or both."*

A preliminary issue that must be dealt with is the question of standing of defendants to challenge the constitutionality of this statute.

The trial court, in denying defendants' motions to dismiss, found that defendants were "assert[ing] the rights of those not in Court". Thus, it noted, "[w]hile it is of paramount importance that precious First Amendment freedoms be given the most careful protection, there will be time enough to erect those barriers when the threat at issue is more substantial * * * ". We cannot agree.

In First Amendment cases, the United States Supreme Court has permitted an exception to the traditional doctrine "that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court". (Citations omitted.) *Broadrick v Oklahoma*, 413 US 601, 610; 93 S Ct 2908; 37 L Ed 2d 830 (1973). The Supreme Court noted:

"It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode

of expression has to give way to other compelling needs of society. *Herndon v Lowry,* 301 US 242, 258 [57 S Ct 732; 81 L Ed 1066] (1937), *Shelton v Tucker,* 364 US 479, 488 [81 S Ct 247; 5 L Ed 2d 231] (1960), *Grayned v City of Rockford,* 408 US [104], at 116–117 [92 S Ct 2294; 33 L Ed 2d 222 (1972)]." 413 US at 611–612.

Applying that principle to the standing doctrine, the Supreme Court held:

"As a corollary, the Court has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' *Dombrowksi v Pfister,* 380 US [479], at 486 [85 S Ct 1116; 14 L Ed 2d 22 (1965)]. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." 413 US at 612.

The holding cited above is not an absolute, however. The Supreme Court noted that "[f]acial overbreadth has not been invoked when a limiting construction has been, or could be placed on the challenged statute".[1] 413 US at 613. Plaintiffs argue that a limiting construction has been placed on the statute, citing *Hightower v Detroit Edison Co,* 262 Mich 1; 247 NW 97 (1933), and *Kelley v Judge of Recorder's Court of Detroit,* 239 Mich 204; 214 NW 316 (1927). However, we find that amendments to the statute subsequent to *High-*

[1] The reference to "could be placed" is inapplicable in this context. The Supreme Court was referring to its doctrine of "abstention", withholding constitutional comment until an authoritative *state* construction has been placed on the questioned statute.

*tower* and *Kelley* have substantially broadened its scope; thus, those two cases cannot be used as authoritative constructional guides. We further hold that we cannot now give a limiting construction to the statute in such a way to deny defendants standing. As noted by this Court in *Phillips v Flint,* 57 Mich App 394, 399; 225 NW2d 780 (1975), " * * * in a First Amendment case, an *ex post facto* construction cannot vitiate the prior 'chill' of an overbroad law on those who challenge it".

Turning then to the merits of the case, defendants attack the statute as unconstitutionally vague, overbroad, and violative of the Equal Protection Clause of the Fourteenth Amendment. Substantially the same arguments were made in an action before Judge Horace Gilmore of the Wayne County Circuit Court, asking for declaratory and injunctive relief. In *Woll v Kelley* (Wayne County Circuit Court Action No. 76 610 569 CZ), Judge Gilmore ruled that the assailed statute was overbroad and represented a denial of equal protection. We agree with Judge Gilmore's analysis as to overbreadth and thus reverse in this case.

On the question of vagueness, the trial court held:

"This court believes that the words themselves are sufficiently clear that 'the ordinary person exercising ordinary common sense can sufficiently understand and comply with them, without sacrifice to the public interest.' *CSC v Letter Carriers,* 413 US 548, 579 [93 S Ct 2880; 37 L Ed 2d 796] (1973).

"There are limitations in the English language with respect to being both specific and manageably brief and it appears that, given the common knowledge of the *raison d'etre* of the Act, the legislature has adequately acquitted itself of that task.

"The Defendants' alleged conduct falls squarely

within the purpose of the statute and from their comments and their argument, it is apparent that Defendants are reasonably aware, both factually and legally, of what they are charged with."

However, defendants complain that the trial court applied the wrong standard. They argue that what they may now be aware of after indictments have been returned against them is totally irrelevant as a matter of constitutional law. Defendants contend that the statute is unconstitutionally void for vagueness because it fails to give a person fair notice of what is prohibited before that person is indicted.

We agree with defendants that the trial court applied the wrong standard in this case. It has been held that a statute which either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Lanzetta v New Jersey,* 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939), *People v Herron,* 68 Mich App 381; 242 NW2d 584 (1976). The constitutional requirement of definiteness is followed in Michigan. *People v Austin,* 301 Mich 456; 3 NW2d 841 (1942), *People v Goulding,* 275 Mich 353; 266 NW 378 (1936), *People v Ellis,* 204 Mich 157; 169 NW 930 (1918). As found by the United States Supreme Court in *Giaccio v Pennsylvania,* 382 US 399, 402; 86 S Ct 518; 15 L Ed 2d 447 (1966):

"A law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."

In *Woll v Kelley,* Judge Gilmore, applying the proper standard, concluded:

"While conceding some complexity in the full text of MCLA 750.410, attributable to the complex nature of the subject and the many possible parties covered by the statute, the wording is not beyond comprehension to a person of normal intelligence. The basic operative phrases follow in logical order and are reasonably understandable. It is not enough for the plaintiff to merely allege that the wording is 'unbelievably awkward.' The burden of proof is on the plaintiff to demonstrate the alleged 'inherent vagueness' of the act. *People v Raub,* 9 Mich App 114 [155 NW2d 878 (1967)]. These allegations are insufficient to meet this burden.

"The statute provides fair notice as to what conduct is sought to be prohibited; and plaintiff's contention of inherent vagueness must fail."

We concur in Judge Gilmore's conclusion. MCLA 750.410; MSA 28.642 is not inherently vague.

Defendants' other contentions are not so easily resolved. On the issue of overbreadth, defendants argue that the statute could be used to prosecute constitutionally protected activity; thus, the statute is overbroad as a matter of law.

The trial court indicated that the dangers posed by an overbroad statute could be ameliorated to insignificance by a definitive construction of the statute. It said that only where solicitation occurred in the context of "ambulance chasing" would it be constitutionally punishable under the statute. Thus, it concluded:

"[I]t is ineluctably clear that the sort of chilling of political activity, attributed by Defendants to the statute does not exist as it applies to the movants here, nor may it be enforced against the associations which the cases cited herein, refer to."

On the other hand, Judge Gilmore maintained "the statute is so overbroad and the possibility of [a] narrowing construction so limited that it must be declared unconstitutional as it is presently written".

Judge Gilmore's analysis in *Woll* is correct. The United States Supreme Court has unequivocally held that state statutes regulating the unauthorized practice of law, solicitation, and lay intermediaries must fall to the extent that they impinge upon First Amendment rights of freedom of speech, petition, and association. *United Transportation Union v State Bar of Michigan,* 401 US 576; 91 S Ct 1076; 28 L Ed 2d 339 (1971), *reversing,* 383 Mich 201; 174 NW2d 811 (1970), *United Mine Workers of America v Illinois State Bar,* 389 US 217; 88 S Ct 353; 19 L Ed 2d 426 (1967), *Brotherhood of Railroad Trainmen v Virginia State Bar,* 377 US 1; 84 S Ct 1113; 12 L Ed 2d 89; *reh den* 377 US 960; 84 S Ct 1625; 12 L Ed 2d 505 (1964), *NAACP v Button,* 371 US 415; 83 S Ct 328; 9 L Ed 2d 405 (1963).

The *United Transportation Union* case bears careful scrutiny, because an analysis of that case best depicts the unconstitutional overbreadth of the present statute. There the Michigan State Bar sued in Jackson County Circuit Court to enjoin the members of a railroad union from violating MCLA 750.410; MSA 28.642. An injunction against the union's activities was reversed and remanded by the Michigan Supreme Court (374 Mich 152; 132 NW2d 78 [1965]). The circuit court then entered a decree enjoining the union from giving or furnishing legal advice to its members or to their families; furnishing to any attorney the names of injured members or information relating to their injuries; accepting or receiving compensation of any kind,

directly or indirectly, for the solicitation of legal employment for any lawyer, whether by way of salary, commission, or otherwise; sharing in the legal fees of any lawyer; controlling the . fees charged by any lawyer; or stating or suggesting that a recommended lawyer would defray expenses of any kind or make advances for any purpose to such injured persons or their families pending settlement of their claim. The Michigan Supreme Court affirmed (383 Mich 201; 174 NW2d 811 [1970]).

On certiorari, the United States Supreme Court reversed. It held that the provision of the decree barring the union from controlling legal fees and the provision precluding the union from stating that a recommended lawyer would defray expenses or make advances violated the First Amendment right to act collectively to obtain affordable and effective legal representation; *that the decree also violated First Amendment rights in enjoining giving or furnishing legal advice to union members or their families, furnishing to any attorney the names of injured members or information relating to their injuries,* or accepting compensation of any kind for the solicitation of legal employment for any lawyer; and that the decree provision forbidding sharing fees or recoveries was unjustified as not supported by the complaint or the record.

The Court stated:

"In the context of this case we deal with a cooperative union of workers seeking to assist its members in effectively asserting claims under the FELA. *But the principle here involved cannot be limited to the facts of this case.* At issue is the basic right to *group legal action,* a right first asserted in this Court by an association of Negroes seeking the protection of freedoms

guaranteed by the Constitution. The common thread running through our decisions in the *NAACP v Button, Trainmen,* and *United Mine Workers* is that collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment. However, that right would be a hollow promise if courts could deny associations or workers or others the means of enabling their members to meet the cost of legal representation." 401 US at 585. (Emphasis added.)

The dissolution of the injunction in *United Transportation Union v State Bar of Michigan, supra,* and the reasoning behind the action can be taken as an expression of the United States Supreme Court's belief that as of 1971, MCLA 750.410; MSA 28.642 was unconstitutionally overbroad. As noted earlier, the statutory language explains that "[a] person, * * * association * * * or members of any such * * * association * * * who shall directly or indirectly * * * solicit a person injured as the result of an accident * * * to employ counsel for the purpose of that solicitation is guilty of a misdemeanor * * * ". The above excerpt apparently means that a person who, with benevolent motive, visits a friend in the hospital after an accident, intending to remind the friend that he should seek legal counsel to protect his rights, violates the statute. On its face, the statute prohibits constitutionally protected conduct. Nevertheless, the statute could still be saved "unless it is not readily subject to a narrowing construction * * * ", *Erznoznik v City of Jacksonville,* 422 US 205, 216; 95 S Ct 2268; 45 L Ed 2d 125 (1975). We do not believe that, as to these defendants, a limiting construction is available, *Phillips v Flint,* 57 Mich App 394, 398–99; 225 NW2d 780 (1975)

(cited earlier in this opinion).[2] Therefore, we hold that MCLA 750.410; MSA 28.642, as it presently reads, is unconstitutionally overbroad. As the statute is unconstitutional, it is a nullity regarding defendants, *Hiett v United States,* 415 F2d 664, 666 (CA 5, 1969), *cert den* 397 US 936; 90 S Ct 941; 25 L Ed 2d 117 (1970). We are constrained to reverse the trial court and order dismissal of defendants' indictments.

Because of our disposition of the overbreadth issue, we need not discuss defendants' equal protection argument.

Reversed and remanded to the trial court with instructions to dismiss defendants' indictments.

---

[2] We realize that this holding raises the spectre that the act could never be authoritatively construed. We acknowledge the possibility of a prospective interpretation, but as that function has traditionally been left to the highest state court, *e.g., Minnesota ex rel Pearson v Probate Court,* 309 US 270; 60 S Ct 523; 84 L Ed 744 (1940), we defer to them.