JACKSON COUNTY EDUCATION ASSOCIATION v GRASS LAKE
COMMUNITY SCHOOLS BOARD OF EDUCATION

Docket No. 78-4709. Submitted June 5, 1979, at Lansing.—Decided
December 27, 1979.

The Jackson County Education Association (Association) filed a
charge with the Michigan Employment Relations Commission
(Commission) alleging that the Grass Lake Community Schools
Board of Education (Board) had violated the public employment
relations act (PERA) by effecting unilateral changes in the
terms and conditions of employment without having reached an
impasse in their bargaining with the union. The Board re-
sponded by filing a charge against the Association alleging that
the union on several occasions had attempted to restrain or
coerce the Board in its selection of a representative for the
purpose of collective bargaining, contrary to PERA. After a
hearing, the administrative law judge found that the unilateral
changes by the employer were lawful. The administrative law
judge also found that all but one of the alleged instances of
union misconduct were lawful. However, with regard to a
petition, which a number of union members signed requesting
the Board to divest itself of the services of its negotiator, the
administrative law judge found a violation of the law. The
Association filed exceptions to the administrative law judge's
decision with the Commission. The Commission reversed as to
the finding of an unfair labor practice by the union. The Board
appeals. *Held:*

1. A petition calling for the removal of the negotiator for the
Board and signed by 509 individuals, all of who were registered
voters and taxpayers and some of whom were members and
officers of the Association, was delivered to the Board. The
wording of the petition indicated the signers were concerned
about the possible waste of taxpayer's money. The Michigan

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur 2d, Agency § 359.
[2] 48A Am Jur 2d, Labor and Labor Relations § 1761.
[3] 2 Am Jur 2d, Administrative Law §§ 722, 723, 747 *et seq.*
[4] 1 Am Jur 2d, Administrative Law § 185.
[5] 16A Am Jur 2d, Constitutional Law § 530 *et seq.*

public employment relations act provides that the Employment Relations Commission's findings of fact are conclusive if supported by competent, material and substantial evidence on the record considered as a whole. The Commission's conclusion that there was no direct evidence that the "teachers, qua Association or otherwise acting in concert, originated or circulated [the] petition" was supported by competent, material and substantial evidence on the whole record.

2. An administrative agency is empowered to interpret its authorizing statute and take into account relevant court decisions. The Commission properly ruled on the constitutionality of PERA.

3. The right of citizens to petition their government for redress of grievances is specifically guaranteed by the United States and Michigan Constitutions and is guaranteed to public employees as well as private citizens. However, that right may be circumscribed to the extent necessary to achieve a valid state objective, and, in such cases, the rights of the citizens must be balanced against the interest of the state in controlling the exercise of that right. A petition calling for the removal of a school board negotiator and signed by teachers, who are taxpayers in the school district as well as members of the teacher's union which bargains with that district's school board, does not amount to an attempt by a labor organization to restrain or coerce a public employer in the selection of its representatives for the purpose of collective bargaining or the adjustment of grievances.

Affirmed.

1. PRINCIPAL AND AGENT — AGENCY RELATIONSHIP — QUESTION OF FACT.

The existence of an agency relationship and the scope of the relationship are questions of fact.

2. LABOR RELATIONS — MICHIGAN EMPLOYMENT RELATIONS COMMISSION — FINDINGS OF FACT — STATUTES.

The Michigan public employment relations act provides that the Employment Relations Commission's findings of fact are conclusive if supported by competent, material and substantial evidence on the record considered as a whole (MCL 423.216[d]; MSA 17.455[16][d]).

3. CONSTITUTIONAL LAW — APPEAL AND ERROR — ADMINISTRATIVE LAW — REVIEW — EVIDENCE.

What the drafters of the Michigan Constitution intended, by use of the sentence "[t]his review shall include, as a minimum, the

determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record", was a review which considers the whole record, not just those portions of the record supporting the findings of the administrative agency; although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative evaluation of evidence considered by an agency (Const 1963, art 6, § 28).

4. ADMINISTRATIVE LAW — INTERPRETATION OF STATUTES — AUTHORITY OF AGENCY.

An administrative agency is empowered to interpret its authorizing statute and take into account relevant court decisions.

5. CONSTITUTIONAL LAW — REDRESS OF GRIEVANCES — PUBLIC EMPLOYEES — CIRCUMSCRIPTION OF RIGHTS.

The right of citizens to petition their government for redress of grievances is specifically guaranteed by the United States and Michigan Constitutions and is guaranteed to public employees as well as private citizens; however, that right may be circumscribed to the extent necessary to achieve a valid state objective, and, in such cases, the rights of the citizens must be balanced against the interest of the state in controlling the exercise of that right (US Const, Am I, Const 1963, art I, § 3).

*Darrel D. Jacobs,* for appellant.

*Foster, Swift, Collins & Coey, P.C.* (by *Arthur R. Przybylowicz),* for appellee.

Amicus Curiae: Michigan Association of School Boards (by *William E. Lobenherz).*

Before: DANHOF, C.J., and V. J. BRENNAN and H. R. CARROLL,* JJ.

PER CURIAM. On September 7, 1977, the Jackson County Education Association (Association), appellee, filed a charge with the Michigan Employment

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Relations Commission (Commission) alleging that the Grass Lake Community Schools Board of Education (Board), appellant, had violated the public employment relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* by effecting unilateral changes in the terms and conditions of employment without having reached an impasse in their bargaining with the union. Appellant responded by filing a charge against the Association alleging that the union, on several occasions, had attempted to restrain or coerce the Board in its selection of its representative for the purpose of collective bargaining contrary to PERA. After a hearing, the administrative law judge found that the unilateral changes by the employer were lawful. The administrative law judge also found that all but one of the alleged instances of union misconduct were lawful. However, with regard to a petition, which a number of union members signed, requesting the Board to divest itself of the services of its negotiator, the administrative law judge found a violation of the law. The Association filed exceptions to the administrative law judge's decision with the Commission. On October 20, 1978, the Commission reversed as to the finding of an unfair labor practice by the union. From that decision, the Board appeals.

On appeal, the Board raises several questions for our review, one of which bears serious consideration. This appeal centers upon the legality of a petition requesting the Board to remove its negotiator with the union, an outside attorney whom the board had retained. The petition was signed by 509 individuals all of whom were apparently registered voters and taxpayers in the school district and some of whom were also members and officers of the teacher's union representing the teachers in

the Grass Lake Community Schools. From the wording of the petition, it would seem that the signers were concerned about the possible waste of taxpayers' money.

Appellant argues that the union officials who signed the petition acted as agents for the union. The Commission found that "[t]here is no direct evidence to show that the Grass Lake teachers, qua Association or otherwise acting in concert, originated or circulated this petition".

The existence of an agency relationship and the scope of that relationship are questions of fact. *Wilkinson v The Detroit Steel & Spring Works,* 73 Mich 405; 41 NW 490 (1889), *Lincoln v Fairfield-Nobel Co,* 76 Mich App 514; 257 NW2d 148 (1977). "The findings of the commission with respect to questions of fact if supported by competent, material, and substantial evidence on the record considered as a whole shall be conclusive." MCL 423.216(d); MSA 17.455(16)(d). Examining identical language contained in the labor mediation act, MCL 423.1 *et seq.;* MSA 17.454(1) *et seq.,* our Supreme Court noted that what was intended "was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency". *Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974).However, the review is not *de novo* in nature. *Id.* The burden of proof in such cases rests with the charging party. *Employment Relations Comm v Reeths-Puffer School Dist,* 391 Mich 253; 215 NW2d 672 (1974).

The source of the petition in the instant case was never clarified. The president of the local

union affiliate of the Association testified that parents in the school district had circulated it. There was no apparent discussion within the union on the matter. Moreover, the petition was presented by someone who was not believed to be a teacher. Accordingly,, viewing the record as a whole, we find the Commission's decision to be supported by competent, material and substantial evidence.

Appellant also contends that the signing of the petition by union officials, even if not acting in an official capacity, violated subsection 10(3)(a)(ii) of the public employment relations act. That section of the act provides in pertinent part:

"(3) It shall be unlawful for a labor organization or its agents (a) to restrain or coerce:

\* \* \*

"(ii) a public employer in the selection of its representatives for the purposes of collective bargaining or the adjustment of grievances;" MCL 423.210(3)(a)(ii); MSA 17.455(10)(3)(a)(ii).

With regard to this charge, the Commission found as follows:

"There is no direct evidence to show that the Grass Lake teachers, qua Association or otherwise acting in concert, originated or circulated this petition. Although one permissible inference from the evidence is that some JCEA member(s) may have authored the petition, we do not find it necessary to resolve this question of fact. Even if the petition was authored by members of the Association or the Association itself, the presentation of a public petition to the governing body of a public institution is clearly protected as part of the 'public discussion of public business \* \* \*' *Madison School District v Wisconsin Employment Relations Commission,* 429 US 167, 175 (1976). We cannot premise

an unfair labor practice on the basis of such First Amendment protected activity as is evidenced in this case."

At the outset, we must determine whether the Commission impermissibly ruled on the constitutionality of PERA. Generally speaking an administrative agency acts in a fact-finding capacity and does not undertake to determine constitutional questions. *Dation v Ford Motor Co,* 314 Mich 152; 22 NW2d 252 (1946). However, such an agency is empowered to interpret its authorizing statute. See *Howard Pore, Inc v State Comm'r of Revenue,* 322 Mich 49; 33 NW2d 657 (1948). In doing so, an agency may properly take into account relevant court decisions. Hence, the Commission did not err by interpreting the statutory language in light of *Madison, supra.*

The meaning of the language contained in that section is a question of first impression in Michigan courts. However, identical language is contained in § 8(b)(1)(B) of the National Labor Relations Act. 29 USC 158(b)(1)(B). We are permitted to be guided by those Federal decisions which have interpreted comparable sections of the NLRA. *Rockwell v Crestwood School Dist Board of Education,* 393 Mich 616; 227 NW2d 736 (1975).

The right of citizens to petition their government for redress of grievances is specifically guaranteed by the United States and Michigan Constitutions. US Const, Am I; Const 1963, art I, § 3. These rights are guaranteed to public employees as well as private citizens. *Pickering v Board of Education,* 391 US 563; 88 S Ct 1731; 20 L Ed 2d 811 (1968), *Abood v Detroit Board of Education,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977), *Sponick v Detroit Police Dep't,* 49 Mich App 162; 211 NW2d 674 (1973). In such cases, the right of

the citizen must be balanced against the interest of the state in controlling the exercise of that right. *Pickering v Board of Education, supra, Grivhan v Western Line Consolidated School Dist,* 439 US 410; 99 S Ct 693; 58 L Ed 2d 619 (1979), *Phillips v City of Flint,* 57 Mich App 394; 225 NW2d 780 (1975). That freedom may be circumscribed to the extent necessary to achieve a valid state objective. See *Sponick v Detroit Police Dep't, supra, Phillips v City of Flint, supra.*

In *Madison Joint School District No 8 v Wisconsin Employment Relations Comm,* 429 US 167; 97 S Ct 421; 50 L Ed 2d 376 (1976), the Court considered whether the state could statutorily preclude teachers, who were not union representatives, from presenting their views to a board of education regarding pending negotiations with the teacher's union. At the time, Wisconsin law prohibited negotiations with a member of the bargaining unit other than the exclusive collective-bargaining representative. *Id.,* 172. The Wisconsin Supreme Court had held that a teacher's presentation of a petition signed by some of the other teachers in the bargaining unit was negotiation within the meaning of the statute and was, therefore, prohibited. *Id.,* 174. In reversing the state Court, the Supreme Court stated as follows:

"Whatever its duties as an employer, when the board sits in public meetings to conduct public business and hear the views of citizens, it may not be required to discriminate between speakers on the basis of their employment, or the content of their speech. See *Police Dep't of Chicago v Mosley,* 408 US 92, 96; 92 S Ct 2286; 33 L Ed 2d 212 (1972)." *Id.,* 176.

It is apparent from the statutory language in question that the Legislature was intent upon

preventing a union from subverting the negotiation process by controlling both sides of the negotiating table. In at least two instances, Federal circuit courts have found picketing to be a violation of the comparable NLRA provision where its admitted purpose was to pressure the company in question to change its choice of supervisors. *International Organization of Masters, Mates and Pilots, International Marine Division, ILA, AFL-CIO v National Labor Relations Board,* 159 US App DC 11; 486 F2d 1272 (1973) *(IOMMP I), International Organization of Masters, Mates and Pilots, Marine Division, International Longshoremen's Association, AFL-CIO v National Labor Relations Board,* 539 F2d 554 (CA 5, 1976) *(IOMMP II).* However, as the Supreme Court has noted, picketing involves more than just speech. *International Brotherhood of Teamsters, Local 695, AFL v Vogt,* 354 US 284, 289; 77 S Ct 1166; 1 L Ed 2d 1347 (1957).

The kind of pressure embodied in a petition such as the one in the present case—that the voters may demonstrate their dissatisfaction at the election polls—stands at the very core of our democratic process and the First Amendment. Thus, if appellant's view is adopted, the statute would prohibit the exercise of this fundamental right on the basis of the individual's employment, a distinction which is suspect under *Madison.* Moreover, the statutory language in question was intended to control concerted activities on the part of the union. See *IOMMP I, supra, IOMMP II, supra.* In the instant case, the teachers signed the petition as individuals, not as part of a group effort organized by the union.

In light of the weighty First Amendment considerations already noted, we affirm the Commission's determination that a petition signed by teachers,

who are taxpayers in the school district as well as members of the teacher's union which bargains with that district's school board, does not amount to an attempt by a labor organization to restrain or coerce a public employer in the selection of its representatives for the purpose of collective bargaining or the adjustment of grievances.

Affirmed.